Charilaos GKIAFIS, Appellant,

v.

STEAMSHIP YIOSONAS, her engines, boilers, boats, tackle, apparel and furniture, and Cia. Nav. Coronado, S.A., Panama, Owners and/or bareboat charterers, Appellees.

No. 11030.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 4, 1967.

Decided Nov. 7, 1967.

W. Cullen MacDonald, Norfolk, Va. (Howell, Anninos & Daugherty, Norfolk, Va., on brief), for appellant.

Randall C. Coleman, Baltimore, Md. (Ober, Williams & Grimes, Baltimore, Md., on brief), for appellees.

Before SOBELOFF, BOREMAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

Whether the district court abused its discretion in dismissing a libel brought by a foreign seaman against a foreign ship and its foreign owners is the question presented by this appeal. We think so and reverse.

Libellant, Gkiafis, is a Greek seaman who joined the Yiosonas, a tramp steamer of Greek registry, in Greece on March 3, 1961. The vessel is owned by a Panamanian corporation, Coronado, the entire stock of which is owned by citizens and residents of Greece. On September 5, 1961, while the vessel was in the Port of Baltimore, an iron forepeak door fell on Gkiafis' right hand damaging three of his fingers. Gkiafis spent ten days in the

Public Health Service Hospital in Baltimore and, upon his discharge, was certified not fit for duty. He was examined by a physician in Norfolk, Virginia, and then filed a libel in the District Court for the Eastern District of Virginia. The libel was transferred to the United States District Court for the District of Maryland on March 13, 1962. On April 27, 1962, Coronado moved the district court to quash service of process on the ground the court lacked jurisdiction (power) to entertain the suit.

More than 16 months later the district court granted Coronado's motion and in May, 1964, the libel was dismissed. On appeal we reversed, Gkiafis v. Yiosonas, 342 F.2d 546 (4th Cir. 1965). By the time the mandate of this court reached the district court more than three years had elapsed from the institution of the libel action. Even so, two months later Coronado moved the district court, in its discretion, to decline to retain jurisdiction.[1]

The libel was in six counts: (1) Unseaworthiness, under the general maritime law; (2) Negligence, under the Jones Act; (3) Maintenance and cure, under the general maritime law; (4) Statutory penalties for failure to pay wages without sufficient cause;[2] (5) Statutory damages for illegal advances in violation of the laws of the United States;[3] (6) Aggravation of damages through failure to provide adequate medical care, hospitalization and cure, under general maritime law. The district judge found that jurisdiction under count (4) is statutory and mandatory; that the Jones Act, as interpreted in Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), does not grant a cause of action on the facts of this case as stated in count (2); and that there were insufficient American contacts to justify retention of discretionary jurisdiction over the other claims

1. Under the Federal Rules of Civil Procedure now applicable in admiralty cases the motion could not have been so long delayed. See Fed.R.Civ.P. 12(g).

2. 46 U.S.C.A. § 596.

3. 46 U.S.C.A. § 599. This count was dismissed pursuant to statement of libellant's counsel at the hearing and is not in issue in this appeal.

under the general maritime law. We affirm retention of jurisdiction as to count (4) and the dismissal of count (2). We reverse the dismissal of counts (1), (3) and (6).

■ A suit in admiralty between foreigners is within the jurisdiction of the District Courts of the United States. U.S.Const. art. III, § 2; The Belgenland v. Jensen, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152 (1885). Not only does jurisdiction exist, but it will be exercised "unless special circumstances exist to show that justice would be better subserved by declining it." Id. at 367, 5 S. Ct. at 866. The question is always one of discretion and our courts have been encouraged to retain jurisdiction "to prevent loss and injustice, especially if no objection is made by the consul of the nation to which the vessel belongs." The Maggie Hammond v. Morland, 9 Wall. 435, 452, 19 L.Ed. 772, 778 (1870).[4]

■ In this circuit the rule was stated by Judge Parker, in a case of libel for personal injuries, to be that an admiralty court is inclined to retain jurisdiction as between foreigners "when (as in this case) it is necessary to prevent a failure of justice, or when the rights of the parties would be thereby best promoted." Heredia v. Davies, 12 F.2d 500, 501 (4th Cir. 1926).

We find it unnecessary to decide whether the rule is that the trial court should decline jurisdiction unless the denial would work injustice or should accept jurisdiction unless to do so would work an injustice.[5] Motor Distribs. Limited v. Olaf Pedersen's Rederi, 239 F.2d 463, 465 (5th Cir. 1957). In the

view that we take of this case, it cannot matter whether the rule is framed in the affirmative or negative, if, indeed, there is a real difference, for we are of the opinion that put either way the pertinent factors compel the retention of jurisdiction.

■ We think the district judge placed too much reliance on the factors enumerated by the Supreme Court as pertinent to the question of choice of law in Lauritzen v. Larsen, supra. While these factors are relevant to the question of the discretionary exercise of jurisdiction, Zouras v. Menelaus Shipping Co., 336 F.2d 209 (1st Cir. 1964), we think that "appropriate adjustments must be made in the weight to be accorded" them when their impact is not upon choice of law but, instead, upon a question of discretionary jurisdiction. Anastasiadis v. S. S. Little John, 346 F.2d 281 (5th Cir. 1965). Thus, the fact that the law of the flag, the allegiance or domicile of the injured, the allegiance of the defendant shipowner, and the place of contract are all foreign cannot be of controlling importance for the simple reason that such factors furnish a common background upon which the question of discretionary retention of jurisdiction commonly arises. But for such factors we would not be faced with the problem of discretionary jurisdiction. If the exercise of discretion, then, is to be anything more than an automatic denial of jurisdiction, emphasis must be placed on factors other than these. Moreover, when the Supreme Court said that inaccessibility of the foreign forum is "not persuasive as to the law" to be applied, it also said that this would be "a persuasive argu-

4. The statement, often attributed to the Supreme Court, that such jurisdiction will be declined "if justice would be as well done by remitting the parties to their home forum," is not that of the Court but is, instead, that of a text writer by the name of Parsons. Id. at 457, 19 L.Ed. 772, 780.

5. Compare, Castillo v. Argonaut Trading Agency, 156 F.Supp. 398, 400 (S.D.N.Y. 1957) ("The Supreme Court has stated that this discretion [to dismiss] may only

be exercised where 'justice would be done as well by remitting the parties to the home forum.' [Charter Shipping Co. v. Bowring, Jones & Tidy, Ltd., 281 U.S. 515, 518, 50 S.Ct. 39, 74 L.Ed. 605 (1930)]," ) with Gonzales v. DampsksIsk Dania, 108 F.Supp. 908 (S.D.N.Y.1952) ("But the court will not ordinarily take cognizance of the case if justice would be as well done by remitting the parties to their home forum. [Langnes v. Green, 282 U.S. 531, 544, 51 S.Ct. 243, 75 L.Ed. 520 (1931).]")

ment for exercising a discretionary jurisdiction to adjudge a controversy." Lauritzen v. Larsen, supra at 589–590, 73 S.Ct. at 932.

■ On the other hand points of contact that are important in determining the *power* of the court to entertain the litigation seem especially relevant in determining whether discretionary jurisdiction ought to be retained. Whether jurisdiction exists and whether it should be exercised certainly are related questions. In the earlier appeal in this case, Judge Sobeloff pointed out some factors that bear on the question of jurisdiction as related to due process and these also seem pertinent to the present question:

"First, the 'quality' of the contacts must be considered, that is, their importance to the corporation and their commercial impact on the state. The respondent owned only one ship. When that ship entered Maryland the respondent was doing all of its business there.[6] Such contacts * * * are of weightier significance than visits by one of many ships owned by a corporation that is doing most of its business elsewhere.

"While in Maryland the ship loaded or unloaded large and valuable cargoes * * *. The visits were thus significant both to the respondent and to the state.

"Second, the locus of the cause of action is to be considered. [Baltimore harbor, in this instance.] * * * Many of the reasons that justify the taking of jurisdiction where the plaintiff is a resident are fully applicable to the case of the present libellant.

"In both situations the state has an interest in discouraging negligent conduct within its borders. * * * By discouraging negligent conduct within its borders not only nonresidents but residents too are afforded greater protection. In some ways, however, the interest of a state in the welfare of nonresidents injured within its borders is stronger. * * * Not only is such a person less likely to have outside resources at his call, but barriers of language and custom may handicap him in getting a job to support himself and discharge financial obligations incurred within the state. The chances of his becoming a public charge and failing to pay his local creditors are increased.

"The locus of the accident has relevance also because it is usually the most convenient place to adjudicate the factual and legal issues arising therefrom * * * regardless of the residence of the plaintiff * * * for the doctors who treated the injury often are to be found there. In addition the applicable law in many cases will be that of the forum state."[7] Gkiafis v. Yiosonas, 342 F.2d 546, 556–557 (4th Cir. 1965).

■ In addition there are present in this case three additional factors to which we think great weight must be given. First, more than six years have now elapsed since Gkiafis was injured.

6. Business "brought the YIOSONAS to Maryland four times before the visit in question: January 13 to January 21, 1953; July 25, 1953; August 6 to August 15, 1955; and September 18 to September 19, 1955. The ship also visited Maryland once after the accident, to discharge cargo on May 23, 1962." Gkiafis v. Yiosonas, 342 F.2d 546, 548 (4th Cir. 1965). Judge Sobeloff also notes that "although the ship was not scheduled to return, it would do so 'as often as it could obtain a cargo.'" Id. at 557.

7. It has been argued to us that a factor in favor of declining jurisdiction is that Greek law will apply under the authority of Lauritzen v. Larsen, supra. We need not decide, but it is worth noting that this is not as clear as it might appear at first glance. At least one authority has pointed out that "the Lauritzen opinion suggests that the general maritime law is not the law of any particular nation but is a part of the law of nations." This reasoning would allow a trial judge to "consider American cases on unseaworthiness as well as, or in preference to, cases or other materials from the relevant foreign country." Gilmore and Black, Admiralty 392–93 (1957). See also, Samad v. The Etivebank, 134 F. Supp. 530, 538 (E.D.Va.1955).

Without imputing intentional delay to Coronado, it is plain that such delay is harshly prejudicial to a foreign seaman's attempts to enforce his rights and intolerable to the administration of justice. As we have said previously, "courts should act promptly and vigorously to vindicate all the rights of seamen, as well those recently conferred on them, as those which date from time immemorial. We doubt not that even now they will often need all the protection that can be given them." Elman v. Moller, 11 F.2d 55, 57 (4th Cir. 1926). However we might have viewed this case six years ago, we think it clear that belated dismissal was improper and an abuse of discretion. See, Conte v. Flota Mercante Del Estado, 277 F.2d 664, 668 (2d Cir. 1960).

■ Secondly, there is no assurance that Gkiafis would be allowed to present his case to the Greek courts. Compare, Berendson v. Rederiaktiebolaget Volo, 257 F.2d 136 (2d Cir. 1958). It is true that Coronado has agreed not to set up the statute of limitations nor to contest jurisdiction in those courts, but jurisdictional questions are in this country not infrequently noticed sua sponte and we cannot assume that it is not so in Greece.[8]

Thirdly, the district court has no choice but to accept jurisdiction as to count (4), and "the court, having taken jurisdiction of the controversy for the purpose of enforcing the provisions of our statutes, should, of course, go on to see that full justice is done with respect to the entire matter." Heros v. Cockinos, 177 F.2d 570, 572 (4th Cir. 1949). But cf., Conte v. Flota Mercante Del Estado, supra 277 F.2d at 667.

In summary, then, the facts that Gkiafis was injured and treated here, that the treating physicians are available here as witnesses, that Coronado owns only one ship and frequently does business in this country, that there has been intolerable delay during which time Gkiafis has retained counsel who has gathered the evidence and who could not represent him in Greece,[9] that his remedy in Greece is at best uncertain, if indeed, available,[10] that the district court must take jurisdiction over one count of the libel, and that the countervailing factors seem to be only those which are necessarily present in every case of this kind, all combine to impell us to the conclusion that jurisdiction should have been retained in this case "to prevent a failure of justice [and because] the rights of the parties [will] be thereby best promoted." Heredia v. Davis, supra 12 F.2d at 501.

■ It is true that the exercise of discretionary jurisdiction is for the district judge and that we are not free to substitute our judgment for his except where there has been an abuse of discretion. Canada Malting Co., Ltd. v. Paterson S.S., Ltd., 285 U.S. 413, 418, 52 S.Ct. 413, 76 L.Ed. 837 (1932). But there is such an abuse "whenever the District Judge has acted so at variance from the view held by the Court of Appeals that the appellate court is justified in saying he has exercised his discretion wrongly."[11] The Eir, 60 F.2d 124, 125

---

8. Federal courts are not permitted to take judicial notice of foreign law. 2B Barron & Holtzoff § 963 at 225–226 (1961).

9. "There is nothing in law or in sound common sense which requires that, in this posture of affairs, the court throw libellant out of court and tell him to start over again in a distant jurisdiction, where counsel who had prepared his case could not appear for him, and where the proofs necessary to establish liability might ·not be obtainable." The Fletero v. Arias, 206 F.2d 267, 270 (4th Cir. 1953).

10. The vessel owner has agreed that if the Greek courts will not take jurisdiction, the case may proceed in Baltimore. Whatever libellant gains by such an agreement is more than offset by the additional loss of time and expense he would have to bear.

11. This is but a paraphrasing of the almost identical verbiage of Brett, M.R. from The Leon XIII, 8 Prob.Div., 121 (England) quoted with approval in The Belgenland, supra at 370, 5 S.Ct. at 867. Compare the various statements of this rule in the following cases: Heredia v. Davies, 12 F.2d 500, 501 (4th Cir. 1926);

(4th Cir. 1932). For the reasons stated we think that we are so justified.

Affirmed as to counts (2) and (4); Reversed as to counts (1), (3) and (6).

BOREMAN, Circuit Judge (concurring in part and dissenting in part):

I concur in the majority decision to affirm the district court's retention of jurisdiction of Count 4 and disposition of Count 2. With all due respect, I find myself in disagreement with that portion of the majority decision which reverses the lower court's refusal to retain jurisdiction of Counts 1, 3, and 6.

The district court retained jurisdiction of Count 4 which involves statutory penalties for failure to pay wages without sufficient cause as it was required to do by statute.[1] It is the position of libellant, strongly urged in the court below and on appeal, that the district court should retain jurisdiction of Counts 1, 3, and 6 since retention of jurisdiction of Count 4 was mandatory. But it is so perfectly obvious to me in the circumstances of this case that Count 4 was included for the very purpose of supporting the libellant's argument based upon it, essentially that jurisdiction of other counts should be retained. In this connection, the facts were that after prolonged litigation and upon remand to the district court a motion to decline jurisdiction and to dismiss the libel was made. A few hours before the time fixed for hearing on the motion an amended libel was filed which included Count 4, alleging the ship's failure to pay wages due in the amount of $10,000.00 This was new matter alleged for the first time by way of amendment. In response to questions propounded to libellant's counsel by this court during the presentation of arguments on appeal, it was disclosed that Count 4 was based on information gleaned from a newspaper account of a very small increase in wages of Greek seamen and that the amount of unpaid wages involved in Count 4 probably

would not exceed a total of $18.00 to $30.00. The libellant insists that the district court should retain jurisdiction of the entire case but I find that contention wholly unpersuasive. The majority opinion herein, in summarizing, assigns as one reason for reversing "that the district court must take jurisdiction over one count of the libel."

The citation to the district court's formal opinion is Gkiafis v. Steamship YIOSONAS, 254 F.Supp. 825 (D.Md. 1966). A reading of that opinion leaves no doubt that the matters dealt with therein were carefully considered and that the decision was not in any sense capricious or arbitrary. Sound and logical reasons were assigned in support of the judge's conclusions. He patterned his decision upon factors discussed and pointed up by the Supreme Court in Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), which bore strictly upon discretionary considerations.

My colleagues express concern over the fact that this litigation was instituted in 1961 and is not yet concluded but my impression is that this delay is attributable in large part to the libellant's clearly reflected determination to present his claim for damages in a court of the United States, a country which has a worldwide reputation for making liberal and generous provision for its seamen and those of other countries as well, rather than to resort to the courts of his native country (Greece) for compensatory damages.

In its footnote 4, 254 F.Supp. at 829, the district court, after calling attention to the fact that the alleged injury occurred in the Port of Baltimore, said:

"* * *. Libellant claims to have been injured because of a defective door on the vessel of which he was a crew member and because of negligence of his fellow seamen with respect thereto. This is not a case involving

---

The Eir, 60 F.2d 124, 125 (4th Cir. 1932); and The Fletero v. Arias, 206 F.2d 267, 270 (4th Cir. 1953).

1. 46 U.S.C.A. § 596 and § 597.

a collision in the channels approaching the port. This is not a case in which a seaman sustained an injury on land while the vessel was in port or even a case where loading or unloading operations conducted by shore based personnel in some way triggered or were causally connected with his injury. Libellant's alleged injury occurred aboard a vessel which merely by chance happened to be in the Port of Baltimore at that time. There is absolutely no relationship or connection, causal or otherwise, between libellant's alleged injury and the location of the vessel upon which he was injured."

In this connection the language of the Supreme Court in Lauritzen v. Larsen, supra, 345 U.S. at pages 585–586, 73 S. Ct. at page 930, as there quoted by the Court from its earlier decisions, attracts my attention as containing a statement of principle which might appropriately be paraphrased and applied to the instant case. The language is as follows:

> " 'And so by comity it came to be generally understood among civilized nations that all matters of discipline *and all things done on board which affected only the vessel or those belonging to her, and did not involve the peace or dignity of the country, or the tranquillity of the port*, should be left by the local government to be dealt with by the authorities of the nation to which the vessel belonged as the laws of that nation or the interests of its commerce should require. * * *.' " (Emphasis added.)

Proceedings in this case have been had in the District Court for the Eastern District of Virginia, at least twice in the District Court for the District of Maryland, and at least twice on appeal to this court. The interests of the United States would be additionally affected by requiring the district court to entertain jurisdiction of this case involving a claim for damages for personal injuries and thus adding to the burdens of an already overburdened judiciary.

The majority opinion recognizes that the question as to the exercise of juris-diction by the district court is one of discretion but concludes that in this case the judge placed too much reliance on the factors enumerated by the Supreme Court as pertinent to the question of choice of law in the *Lauritzen* case. The majority opinion states:

> " * * *. While these factors are relevant to the question of the discretionary exercise of jurisdiction, * * * we think that 'appropriate adjustments must be made in the weight to be accorded' them when their impact is not upon choice of law but, instead, upon a question of discretionary jurisdiction."

The discretion to be exercised in retaining jurisdiction of this case is that of the district court. We should not interfere unless there has been a clear abuse of such discretion. Cogently the district judge stated his reasons for declining jurisdiction of Counts 1, 3, and 6 and I am not convinced that he abused his discretion. I would affirm the decision below.