Hugo **RODRIGUEZ**, Plaintiff-Appellant,

v.

**FLOTA MERCANTE GRANCOLOMBIA-NA, S.A., Grancolombiana (New York), Inc.,** Defendants-Appellees.

No. 81–4455.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 1982.

Decided March 15, 1983.

Opinion on Denial of Rehearing March 15, 1983.

---

Kennedy, Circuit Judge, concurred in the judgment with an opinion.

Allan I. Shatkin, San Francisco, Cal., for plaintiff-appellant.

James J. Tamulski, Graham & James, San Francisco, Cal., for defendants-appellees.

Before KENNEDY, ALARCON and NELSON, Circuit Judges.

ALARCON, Circuit Judge:

Hugo Rodriguez, (Rodriguez) a seaman, appeals from the district court's order dismissing his complaint brought under the Jones Act,[1] and the general maritime law, to recover damages for injuries caused by his employer's negligence. We must decide whether the facts establish that the court had subject matter jurisdiction.[2] We conclude that the district court was correct in determining that it lacked subject matter jurisdiction under the Jones Act. Flota Mercante Grancolombiana, S.A., (Flota) is not an employer within the scope of the Jones Act. We reverse and remand for a determination of the sufficiency of the claim brought pursuant to the general maritime law, and, if so, whether in the exercise of the district court's discretion, jurisdiction should be retained.

## I. DISPOSITIVE ISSUES

Rodriguez contends that the facts presented to the district court established its jurisdiction to hear his Jones Act claim against Flota.

We are told that presence of the following factors satisfied all jurisdictional requirements.

One. Rodriguez was injured while working as a seaman on Flota's vessel in the port of San Francisco, within the territorial waters of the United States.

Two. Flota had substantial operational contacts within the United States to render Flota an employer within the Jones Act.

Three. The fact that Flota has been involved in a number of lawsuits in the United States as a plaintiff or defendant "is an indicium of its business relations and contact with the United States."

## II. PERTINENT FACTS

Rodriguez was injured on May 18, 1979 on the CIUDAD DE CALI, while the vessel was in the port of San Francisco. He received medical treatment at a hospital in the city of San Francisco.

Rodriguez is a Colombian citizen and resides there. His employment contract with Flota was signed in Colombia. The contract provides that the parties recognize the jurisdiction of the Colombian courts over any matter that might arise from the contract. The agreement also provides that the law of Colombia shall apply.

Flota is the owner of the CIUDAD DE CALI. The Ciudad De Cali is registered in Colombia and flies a Colombian flag. The vessel's home port is also in Colombia.

Flota is a Colombian corporation headquartered in Bogota, Colombia. Eighty percent of Flota is owned by Colombian interest and 20 percent is owned by Equadorian interests. All of Flota's officers and managers reside in Colombia. All of its business matters and operations are centered in Bogata. In 1979, Flota owned 29 vessels. Thirteen Flota ships called at United States ports during that year. The CIUDAD DE CALI called on 15 ports in 1979; four of these were in the United States. During the CIUDAD DE CALI's 72-day round trip voyage from Colombia to North America, six days were spent in United States ports.

In 1979, Flota grossed $93,493,984 dollars from the call of its vessels in United States ports.

In 1979 Flota had a contract with Grancolombiana (New York), Inc. (Granco) a New York corporation, to service its shoreside needs in the United States. Two of Granco's employees served as Flota's owner's representatives. The duties of the owner's representatives are to husband vessels in United States ports.

---

1. The Jones Act, 46 U.S.C. § 688, provides in relevant part, "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury...."

2. The determination of whether subject matter jurisdiction exists is a question of law. We must thereby apply a *de novo* standard of review. *See Bank of California, N.A. v. Opie,* 663 F.2d 977, 979 (9th Cir.1981).

## III. DISCUSSION

We begin our discussion with a statement of the relevant law and procedure which must be applied when a challenge is raised to the jurisdiction of a district court in a Jones Act matter.

### A. *Pleading Subject Matter Jurisdiction Under the Jones Act*

██ A complaint which is "drawn so as to claim a right to recover under the Constitution and laws of the United States" states a cause of action. *Bell v. Hood,* 327 U.S. 678, 681, 66 S.Ct. 773, 775, 90 L.Ed. 939 (1946). A tort claim under the Jones Act is properly plead if it contains allegations that the injured person is a seaman who was acting within the scope of his employment when he was injured. *Gebhard v. S.S. Hawaiian Legislator,* 425 F.2d 1303, 1308 (9th Cir.1970). No issue has been raised as to the sufficiency of the pleading under the *Gebhart* test. Rodriguez alleged that he was injured as the result of Flota's negligence while performing an activity within the scope of his employment as a seaman.

### B. *Jurisdictional Defense to Jones Act Claim*

██ An assertion by a seaman that the Jones Act affords him the right to recover damages for injuries resulting from the negligence of his employer is sufficient to empower the district court to assume jurisdiction over the case and "to determine whether it was or was not well founded in law and fact." *Lauritzen v. Larsen,* 345 U.S. 571, 575, 73 S.Ct. 921, 924, 97 L.Ed. 1254 (1953). The failure to state a claim under the Jones Act is not the equivalent of the lack of subject matter jurisdiction. "It is well established that failure to state a proper claim calls for a judgment on the merits and not a dismissal for want of jurisdiction." *Bell v. Wood,* 327 U.S. 673, 682, (1946). The fact that a complaint states a cause of action should not however, be confused with the question of whether jurisdiction exists over the subject matter. *See Montana-Dakota Utilities Co. v. Northwestern Public Service Co.,* 341 U.S. 246, 249, 71 S.Ct. 692, 694, 95 L.Ed. 912 (1951). Upon a proper showing, a district court may dismiss a complaint for lack of subject matter jurisdiction if the shipowner is not an " 'employer' for Jones Act purposes." *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 308–309, 90 S.Ct. 1731, 1733–1734, 26 L.Ed.2d 252 (1970).

██ Where a defendant in an action brought under the Jones Act claims that the court lacks jurisdiction over the subject matter, on the grounds that he is not an employer subject to liability under the statute, the plaintiff must show that the shipowner has substantial contacts with the United States so as to be considered an employer subject to statutory liability in an American court. *See, e.g., id.* at 310, 90 S.Ct. at 1734.

In *Lauritzen,* the Supreme Court stated that the following factors should be considered on determining whether a particular shipowner should be held to be an "employer" under the Jones Act: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured seaman; (4) the allegiance of the defendant shipowner; (5) the place where the contract of employment was made; (6) the inaccessibility of a foreign forum; and (7) the law of the forum. 345 U.S. at 583–91, 73 S.Ct. at 928–932.

In *Rhoditis,* the Supreme Court noted that the seven factors set forth in *Lauritzen* were not intended to be exhaustive and that an additional factor of importance in determining whether the Jones Act is applicable is the shipowner's base of operations. 398 U.S. at 309, 90 S.Ct. at 1734.

### C. *Law of the Place of the Wrongful Act versus The Law of the Flag*

██ Rodriguez argues that the district court had jurisdiction over the shipowner, in spite of its Colombian registry and flag because Rodriguez was injured in the port of San Francisco. A similar issue was presented to the Supreme Court in *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 769 (1959).

In *Romero,* a Spanish seaman was injured in United States territorial waters while aboard a ship of Spanish registry, flying a Spanish flag. The district court dismissed the action under the Jones Act for lack of jurisdiction on the ground that the Act provided no right of action for an alien seaman against a foreign shipowner under these circumstances. The Supreme Court affirmed the dismissal of the seaman's Jones Act against the shipowner. The Court refused to apply the law of the place of the wrongful act or omission. The court reasoned as follows:

> Although the place of injury has often been deemed determinative of the choice of law in municipal conflict of laws, such a rule does not fit the accommodations that become relevant in fair and prudent regard for the interests of foreign nations in the regulation of their own ships and their own nationals, and the effect upon our interests of our treatment of the legitimate interests of foreign nations. To impose on ships the duty of shifting from one standard of compensation to another as the vessel passes the boundaries of territorial waters would be not only an onerous but also an unduly speculative burden, disruptive of international commerce and without basis in the expressed policies of this country. The amount and type of recovery which a foreign seaman may receive from his foreign employer while sailing on a foreign ship should not depend on the wholly fortuitous circumstance of the place of injury.

*Id.* at 384, 79 S.Ct. at 486.

Thus, Rodriguez' claim that the district court erred in dismissing this matter because the injury to a Colombian seaman on a vessel flying a Colombian flag, occurred in San Francisco is devoid of merit under *Romero.*

### D. *Base of Operations*

■ Rodriguez urges us to reverse the district court because he views the facts as showing that Flota's base of operations was in the United States. He points to the following facts as proof that Flota's base of operations was in the United States.

1. $93,493,984.00 in gross income derived from ships which called on the United States in 1979.

2. "[V]irtually all of the CIUDAD CALI's voyages in 1979 have had contact with American ports ...." Appellant's Opening Brief at 13.

3. Flota had three owner's representatives in the United States.

4. In 1966 Flota had an operating manager in the United States.

5. Thirteen of Flota's vessels regularly call on United States ports.

6. "The letterhead of Grancolombiana, New York, Inc., includes a section which states: Flota Mercante Grancolombiana S.A., 50 California Street, San Francisco, California." Appellant's Opening Brief at 30.

7. Flota is listed in the San Francisco telephone directories and advertises in American publications.

The uncontradicted evidence in this matter establishes that Flota's "base of operations" was in Bogota, Colombia and not in the United States. Its officers and managers reside in Bogota. All of its business decisions are made in Bogota and then transmitted to its agents or owner representatives in foreign ports. Its vessels begin and end their voyages in Colombia. The fact that it has agents in the United States to husband its vessels while in American ports is of no significance in determining Flota's base of operations. *See Merren v. A/S Borgestad,* 519 F.2d 82, 83 (5th Cir. 1975). The fact that Flota's vessels have grossed an impressive amount of income in calling on ports of the United States does not prove that Flota's base of operations is in the United States. We have not been referred to any case which has established Jones Act jurisdiction based on the dollar amount derived by a foreign shipowner from his shipments to and from United States ports. It does not appear logically relevant to us that a foreign shipowner's base of operations depends upon the financial success of its shipments to or from

another country. The fact that a foreign shipowner has a mailing address in the United States and is listed in telephone directories is not proof that its base of operations is in this country. There is no evidence in the record as to whether any operational activities were conducted from the listed premises in 1979.

Each of the cases relied upon by Rodriguez as support for his view that Flota's base of operations was in the United States is readily distinguishable.

In *Rhoditis,* the shipowner was a Greek corporation. However, it had its largest office in New York and a second office in New Orleans. More than 95 percent of its stock was owned by a United States domiciliary who resided in Connecticut and had been in the United States for 25 years. He managed the corporation out of New York. 398 U.S. at 307–08, 90 S.Ct. at 1733. Under these facts the Supreme Court found that the shipowner was engaged in extensive business operations in this country. *Id.* at 310, 90 S.Ct. at 1734. No parallel facts appear on the record before this court.

In *Moncada v. Lemuria Shipping Corp.,* 491 F.2d 470 (2d Cir.), *cert. denied,* 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974), the court noted that "Jones Act jurisdiction exists only where there are substantial contacts between the transaction involved in the case and the United States . . . ." *Id.* at 472. In *Moncado,* Americans owned all of the stock of the shipowner. In addition, all the officers of the shipowner were American. The shipowner's base of operations was in the United States. *Id.* at 473. The court concluded that these facts established substantial contacts with the United States. *Id.* In the matter *sub judice* no American owns stock in the shipowner or is a member of its management team.

*Merren,* 519 F.2d at 82, has been cited to us for the proposition that "maintenance of offices or organizational affiliation in the United States was a significant factor" in determining whether the district court has subject matter jurisdiction over a shipowner under the Jones Act. Appellant's Opening Brief at 15. The *Merren* case provides

no support for Rodriguez's cause. The court in *Merren* affirmed the district court's order granting a summary judgment on jurisdictional grounds. The court noted that "except to the extent of having shipping agents who contracted in American ports for the use of the ship's services" the shipowner maintained no offices and no affiliation with any organization in the United States. *Id.* at 83. In the matter before us, Flota's only affiliation with any organization was to maintain owner's representatives whose sole concern was the husbanding of its vessels and contracting for their services.

In his opening brief, Rodriguez tells us that in *Gkiafis v. Steamship Yiosonas,* 387 F.2d 460 (4th Cir.1967) the Fourth Circuit "was impelled to reverse the district court which had dismissed a personal injury suit brought under the general maritime law and Jones Act." Appellant's Opening Brief at 19. We have read *Gkiafis.* In fact, the Fourth Circuit *affirmed* the dismissal of the Jones Act claim for failure to state a cause of action. 387 F.2d at 461–62.

Rodriguez places heavy reliance on *Fisher v. Agios Nicolaos V,* 628 F.2d 308 (5th Cir. 1980), *cert. denied,* 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981). Rodriguez also directs our attention to *Phillips v. Amoco Trinidad Oil Co.,* 632 F.2d 82 (9th Cir.1980), *cert. denied,* 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981). Both cases are inapposite to the problem we must resolve. In both *Fisher* and *Phillips,* this court was presented with a choice of law problem. No issue was raised in either case as to the court's jurisdiction of the subject matter under the Jones Act. Thus, neither *Fisher* nor *Phillips* provides assistance to us or Rodriguez in resolving the question of the district court's Jones Act jurisdiction of this matter.

The remaining cases cited by Rodriguez, *Castanho v. Jackson Marine, Inc.,* 650 F.2d 546 (5th Cir.1981) (per curiam); *Chiazor v. Transworld Drilling Co., Ltd.,* 648 F.2d 1015 (5th Cir.1981), *cert. denied,* 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982); *Antypas v. CIA. Maritima San Basilio, S.A.,* 541

F.2d 307 (2d Cir.1976), *cert. denied,* 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977), are each concerned with the application of the doctrine of *forum non conveniens* to the particular facts of each case. They shed no light on the issue of subject matter jurisdiction under the Jones Act.

### E. *Effect of the Use of the Courts of the United States by Flota*

■ Without citation to any authority, Rodriguez suggests that the fact that Flota has been involved in litigation in the United States is a significant contact with this country. None of the enumerated cases involve alleged Jones Act violations. We fail to see their relevance to the matter at hand.[3]

We conclude that plaintiff has failed to demonstrate that the shipowner had sufficient contacts with the United States in 1979 to make Flota an employer under the Jones Act so as to give the district court subject matter jurisdiction over Rodriguez's claim.

### IV. THE GENERAL MARITIME LAW CLAIM AND FORUM NON CONVENIENS

■ Rodriguez sought damages for his injuries under the Jones Act and under the General Maritime Law before this court. Rodriguez asked us to determine "[w]hether the district court erred in dismissing the action for lack of Jones Act jurisdiction ..." in the district court, however, Flota requested that the district court dismiss this action "either on the ground that this Court does not have subject matter jurisdiction, or on the basis of *forum non conveniens.*"

The district court's order dismissing this action fails to specify whether its action was compelled by lack of subject matter jurisdiction or because it had determined that the doctrine of *forum non conveniens* was applicable. The order simply states that "the defendant's motion to dismiss is granted."

As discussed above, we have concluded that the district court did not have subject matter of the jurisdiction of the cause of action based on the Jones Act. We cannot discuss from the court's cryptic order whether the district court concluded that it lacked subject matter jurisdiction under the General Maritime or if, instead, it determined not to exercise its jurisdiction under *forum non conveniens* consideration. It is our view that the district court should determine, in the first instance, whether a proper claim has been pleaded under the General Maritime Law and the applicability of the doctrine of *forum non conveniens.*

### CONCLUSION

The dismissal of the cause of action pleaded under the Jones Act is AFFIRMED. The dismissal of the second cause of action is REVERSED. The cause is remanded for a determination of the sufficiency of the remaining claim under the General Maritime Act in its sound discretion, and whether retention of jurisdiction is appropriate under *forum non conveniens* principles.

KENNEDY, Circuit Judge, concurring:

I concur in the judgment, but write separately to call attention to a conceptual problem in these cases, namely, whether to characterize an unsuccessful Jones Act claim as lacking in subject matter jurisdiction or as failing to state a cause of action. The majority opts for the first category, and has precedent for it, since the Supreme Court in *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S.

---

**3.** Rodriguez also argues that the Colombian forum is not convenient to him because his physicians and medical records are in the United States, and he has retained American counsel who could not represent him in Colombia. Convenience of the witnesses and the attorney are not factors cited by the Court in *Lauritzen* and *Rhoditis* as determinators of the Jones Act jurisdiction. Although these factors "might be a persuasive argument for exercising a discretionary jurisdiction to adjudge a controversy ... it is not persuasive as to the law by which it shall be judged." *Lauritzen,* 345 U.S. at 589–90, 73 S.Ct. at 931–932. Thus, the costs and loss of time entailed in deposing the medical witnesses and sending the records and the American attorney to Colombia while relevant to the issue of *forum non conveniens* are not relevant factors in determining whether Jones Act jurisdiction is present.

306, 308, 90 S.Ct. 1731, 1733, 26 L.Ed.2d 252 (1970), stated, "[o]f the seven factors (relating to Jones Act coverage) . . . four are in favor of the shipowner and against *jurisdiction*." (Emphasis added.) I suggest, however, that this was only a passing and unguarded remark.

The real question in these cases is not one of subject matter jurisdiction but simply whether or not there has been a failure to state a claim for relief under the Jones Act. The Supreme Court expressly recognized this analysis in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), the leading case on the multi-factor test for determining what law should apply to an accident containing both foreign and domestic elements. There the court dismissed the case for failure to state a claim under the Jones Act. It expressly rejected the defendant's suggestion that it dismiss the case for lack of subject matter jurisdiction, stating:

> As frequently happens, a contention that there is some barrier to granting plaintiff's claim is cast in terms of an exception to jurisdiction of subject matter. A cause of action under our law was asserted here, and the court had power to determine whether it was or was not well founded in law and in fact.

*Id.* at 575, 73 S.Ct. at 924.

Later Supreme Court and lower court decisions have usually employed the *Lauritzen* test in the same fashion. *See Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 769 (1959); *Koupetoris v. Konkar Intrepid Corp.*, 535 F.2d 1392 (2d Cir. 1976); *Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437 (2d Cir. 1959); *Chirinos de Alvarez v. Creole Petroleum Corp.*, 613 F.2d 1240 (3d Cir. 1980); *Chiazor v. Transworld Drilling Co., Ltd.*, 648 F.2d 1015 (5th Cir. 1981); *Fisher v. Agios Nicolaos V*, 628 F.2d 308 (5th Cir. 1980); *Merren v. A/S Borgestad*, 519 F.2d 82 (5th Cir. 1975). In light of these authorities, I suggest the appropriate analysis in these cases should be to ask whether there is a failure to state a claim.

Unfortunately, the present case renders this more than a disagreement over seman-

tics. The majority appears to hold that by labeling this a "subject matter jurisdiction" case, we are somehow prevented from considering such important precedents in our own court as *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82 (9th Cir. 1980). The *Phillips* case is directly in point for us here, and in fact supports our judgment. It should not be pushed aside because it is a choice of law case or failure to state a claim case. In fact the issue is whether or not there is a failure to state a claim, and we resort to standard choice of law principles to answer that question. The majority itself, in the case before us, cites the same factors as *Phillips* did, namely the *Lauritzen* case, so I fail to see how *Phillips* can be inapplicable. The trouble ends where it started, namely by calling this a jurisdictional matter, when failure to state a claim is the real issue.

## ORDER AFTER PETITION FOR REHEARING

Before KENNEDY, ALARCON and NELSON, Circuit Judges.

Appellant's request that this matter not be remanded is granted. The judgment of the district court is affirmed in its entirety. The petition for a rehearing is denied. The mandate shall issue now.