169 F.3d 625
 1999 A.M.C. 1070, 99 Cal. Daily Op. Serv. 1601,
1999 Daily Journal D.A.R. 2066,
1999 Daily Journal D.A.R. 4147
 Michael John WARN, as personal representative of The Estate
of Nicholas Warn, decedent; Gloria Warn-Wyeth; Lee Warn;
Melanie Warn; Nathan Warn; Panagiotis Stathopoulos, as
personal representative of The Estate of George Florian
Stathopoulos; Robert Stathopoulos; Vera Maria Brigman;
Ilona Brigman-Thiel, as personal representative of The
Estate of Andreas Brigman; Christine Willshaw, as personal
representative of The Estate of Simon Paul Willshaw;
Frederick Willshaw; Richard Brooks, an individual on behalf
of himself, Plaintiffs-Appellants,
v.
M/Y MARIDOME, her Engines, Tackle, Apparel, Furniture and
Appurtenances, in rem; Maridome Marine Limited, a
corporation, in personam; James Boos, in personam; Boston
Whaler, Inc., a corporation, in personam, Defendants-Appellees.
 Nos. 97-55610, 97-56355.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 11, 1998.
Decided March 3, 1999.
As Amended May 3, 1999.
 
 Matthew F. Quint, Wilson & Quint, San Francisco, California, for the plaintiffs-appellants.
 George J. Koelzer (argued), Robert J. Zapf, Joshua S. Force, Hancock Rothert & Bunshoft, Los Angeles, California; Rosemary Springer (argued), Justs N. Karlsons, S. Mark Varney, Carroll, Burdick & McDonough, San Francisco, California, for the defendants-appellees.
 Appeals from the United States District Court for the Southern District of California; Rudi M. Brewster, District Judge, Presiding. D.C. No. CV-96-01800-RMB.
 Before: KOZINSKI and O'SCANNLAIN, Circuit Judges, and DAMRELL, JR.,* District Judge.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We must decide whether the victims of a maritime accident in foreign waters may state claims under the Jones Act.
 
 
 2
 * In the early hours of September 3, 1995, the tender of the yacht M/Y Maridome ("Maridome") struck a metal pipe structure in the harbor of the Port of Poros, Greece, while ferrying passengers and crew from ship to shore. Nicholas Warn, George Stathopoulos, Andreas Brigman, and Simon Willshaw were killed in the accident; Richard Brooks was seriously injured. Warn, Willshaw, and Brooks were British crewmembers of the Maridome; Brigman and Stathopoulos were guests with Greek and German dual citizenship. The tender was apparently en route to a disco, and its helmsman allegedly was drunk and sailing at excessive speed.
 
 
 3
 The Maridome is a 177-foot luxury yacht that flies the British flag and is owned by Maridome Marine Limited, a British Channel Islands corporation. The yacht's ultimate beneficial owner is Enrique Molina, a citizen and domiciliary of Mexico. Peter Lee, a United States citizen and captain of the Maridome from August 1992 until April 1994, provided shoreside management of the Maridome from his Virginia home until August 1995, just days before the accident.
 
 
 4
 Relatives of those killed in the accident initially sought redress in the Greek courts, filing an application for the arrest of the Maridome in the Greek Court of Piraeus on September 5, 1995, and bringing claims under Greek law. Following its arrest, the Maridome posted roughly $400,000 in security and sailed from Greece on September 18, 1995. Subsequent proceedings in the Greek courts led to the withdrawal of the claims against the Maridome, without prejudice to their reassertion in the future.
 
 
 5
 During the pendency of the Greek proceedings, Michael John Warn, Gloria Warn-Wyeth, Lee Warn, Melanie Warn, Nathan Warn, Panagiotis Stathopoulos, Robert Stathopoulos, Vera Maria Brigman, Ilona Brigman-Thiel, Christine Willshaw, and Frederick Willshaw, on behalf of the decedents, and Richard Brooks (collectively, "the Warn appellants") filed this action in San Diego, California on October 17, 1996, naming the Maridome, its owner, Maridome Marine Limited, and its captain, James Boos, as defendants (collectively, "the Maridome appellees"). The Warn appellants sought the arrest of the Maridome (then in the United States), which was granted, and brought claims under the Jones Act, the Death on the High Seas Act, and general United States maritime law. In addition, the Warn appellants sought any remedies to which they were entitled under the laws of Greece or of the United Kingdom. The Warn appellants later filed an amended complaint, which added product liability claims against Boston Whaler, Inc. as the manufacturer of the Maridome's tender. Following its arrest, the Maridome posted a $15,000,000 bond and left United States waters shortly thereafter.
 
 
 6
 Upon motions by the Maridome appellants and Boston Whaler, the district court dismissed the Warn appellants's Jones Act, Death on the High Seas Act, and general United States maritime law claims because it concluded that the relevant factors weighed against the application of United States law. The district court dismissed for forum non conveniens any foreign law claims that the Warn appellants might have pleaded or amended their complaint to plead.
 
 
 7
 The Warn appellants timely appealed from the dismissal of their Jones Act claims, the dismissal for forum non conveniens, and the district court's denial of their motion for reconsideration.[1]
 
 II
 
 8
 The Warn appellants assert that the district court erred by dismissing their Jones Act claims. We first address a point of marginal confusion in our case law. In the district court, the Maridome appellees moved for dismissal for failure to state a claim or for lack of subject matter jurisdiction, asserting that the Jones Act was inapplicable to the Warn appellants's claims under the choice of law factors set forth by the Supreme Court in Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). The district court applied the Lauritzen factors and granted the motion, characterizing the dismissal as one for lack of "subject matter jurisdiction," relying upon our opinion in Rodriguez v. Flota Mercante Grancolombiana, S.A., 703 F.2d 1069 (9th Cir.1983).
 
 
 9
 In Rodriguez, the majority implied that the choice of law inquiry using the Lauritzen factors determines whether a federal court possesses subject matter jurisdiction over a Jones Act claim. See id. at 1072. However, then Judge Kennedy, concurring in the result but not in the analysis, pointed out that the majority had been led astray by the Supreme Court's "passing and unguarded remark," id. at 1076, in Hellenic Lines, Ltd. v. Rhoditis, that of the seven Lauritzen factors, "it is urged that four are in favor of the shipowner and against jurisdiction," 398 U.S. 306, 308, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970) (emphasis added). Then Judge Kennedy asserted that "[t]he real question in these cases is not one of subject matter jurisdiction but simply whether or not there has been a failure to state a claim for relief under the Jones Act." Rodriguez, 703 F.2d at 1076.
 
 
 10
 Lauritzen itself expressly bears this assertion out. There, the Supreme Court noted that, "[a]s frequently happens, a contention that there is some barrier to granting plaintiff's claim is cast in terms of an exception to jurisdiction of subject matter." 345 U.S. at 575, 73 S.Ct. 921 (emphasis added). The Court rejected the mischaracterization of the question as one of subject matter jurisdiction, and made plain that "[a] cause of action under our law was asserted here, and the court had power to determine whether it was or was not well founded in law and in fact." Id. (emphasis added).
 
 
 11
 In cases subsequent to Rodriguez, we have followed the Lauritzen "failure to state a claim" approach of the concurrence in Rodriguez, rather than the "subject matter jurisdiction" characterization of the Rodriguez majority. For example, in Bilyk v. Vessel Nair, we framed the issue decided by the Lauritzen factors as "[w]hether United States or Mexican law applies to this case, i.e., whether a cause of action was stated under the Jones Act." 754 F.2d 1541, 1542 (9th Cir.1985). Similarly, in Dalla v. Atlas Maritime Co., we indicated that the application of the Lauritzen factors determines "[w]hether a claim has been stated under the Jones Act." 771 F.2d 1277, 1278 (9th Cir.1985).
 
 
 12
 Consistent with these cases, we now clarify that where a court's choice of law analysis using the Lauritzen factors indicates that foreign law, rather than the Jones Act, is applicable to a party's claims, the court's order will be treated, on appeal, as a dismissal for failure to state a claim, rather than a dismissal for lack of subject matter jurisdiction.
 
 III
 
 13
 Turning to the merits of the district court's dismissal of the Jones Act claims based on the Lauritzen choice of law analysis, the Lauritzen factors are (1) the place of the wrongful act, (2) the law of the flag, (3) the allegiance or domicile of the injured party, (4) the allegiance of the shipowner, (5) the place of the seaman's employment contract, (6) the accessibility of a foreign forum, and (7) the law of the forum. See Lauritzen, 345 U.S. at 583-592, 73 S.Ct. 921. In Rhoditis, the Supreme Court stated that "the list of seven factors in Lauritzen was not intended as exhaustive," and instructed courts to consider the "shipowner's base of operations" as an additional factor. Rhoditis, 398 U.S. at 309, 90 S.Ct. 1731. The question to be answered by reference to these factors is a simple one: are the United States's interests sufficiently implicated to warrant the application of United States law? See Bilyk, 754 F.2d at 1543 ("The purpose of the analysis is to balance the interests of the nations whose law might apply.").
 
 
 14
 Here, all of the relevant Lauritzen factors point toward the application of foreign maritime law, rather than the Jones Act: the accident occurred in Greek coastal waters; the Maridome flies a British flag; none of the injured or deceased parties are or were American citizens or domiciliaries; the shipowner is a Mexican citizen and domiciliary; none of the injured or deceased sailors's employment contracts were signed in the United States; and Greece provides an accessible forum, as evidenced by the action filed in that forum.[2]
 
 
 15
 The Warn appellants concede as much, but argue that the Maridome's United States base of operations alone provides a sufficient basis to apply the Jones Act. We have never held, however, that the base of operations factor is dispositive in the Lauritzen choice of law inquiry, and have instead held, in a case almost directly on point, that the Jones Act may be inapplicable despite a United States base of operations. In Villar v. Crowley Maritime Corp., a Philippine seaman on a Philippine-flagged ship was injured in Saudi Arabian waters. See 782 F.2d 1478, 1479 (9th Cir.1986). We did not consider it dispositive that the ship was owned by a United States corporation with what was arguably a United States base of operations. Instead, we held that "even assuming that [the shipowner's] base of operations is in the United States, under these facts that alone is not a sufficient basis to apply the Jones Act." Id. at 1482 (emphasis added); see also Pereira v. Utah Transport, Inc., 764 F.2d 686, 689-90 (9th Cir.1985) (holding that the Jones Act was inapplicable despite a United States base of operations because the law of the flag presumptively governs and the employment contract so provided).
 
 
 16
 In fact, the only factor we have considered potentially dispositive is the law of the flag, recognizing that "Lauritzen itself firmly mandates that the law of the flag presumptively controls, unless other factors point decidedly in a different direction." Bilyk, 754 F.2d at 1545; see also Pereira, 764 F.2d at 689 (stating that the law of the flag is of cardinal importance and "should be accorded great weight in the choice of law analysis"). Here, the law of the flag and a majority of the other factors point decidedly in the same direction: the Maridome flies a British flag, is owned by a British Channel Islands holding company and is insured in the United Kingdom, and the remaining appellants represent British sailors whose contracts of employment were apparently signed within the British Commonwealth. Thus, even assuming that the Maridome's base of operations was the United States, the weight of the Lauritzen factors indicates that foreign law is applicable rather than the Jones Act.[3]
 
 
 17
 We do not decide today that a United States base of operations alone cannot ever be dispositive; we simply conclude that the factors here pointing toward application of foreign law outweigh the sole factor arguably militating in favor of applying the Jones Act. Thus we affirm the district court's dismissal of the Jones Act claims.[4]
 
 IV
 
 18
 The Warn appellants also assert that the district court erred by dismissing their remaining claims. Having dismissed the bulk of the Warn appellants's claims under the Lauritzen analysis, the district court proceeded to dismiss for forum non conveniens any residual foreign or domestic claims that the Warn appellants might have pleaded or sought leave to amend to plead. The Warn appellants give relatively short shrift to this portion of the appeal in their briefs, presumably because dismissal for forums non conveniens would be precluded if the Jones Act were applicable to their claims, see Creative Technology, Ltd. v. Aztech System Pte., Ltd., 61 F.3d 696, 699-700 (9th Cir.1995). Having affirmed the district court's determination that the Jones Act is not applicable, we have little trouble determining that the district court did not abuse its discretion in dismissing the remaining claims for forum non conveniens.
 
 
 19
 The district court weighed the relevant private and public interest factors, see generally Pereira, 764 F.2d at 690, in particular observing that both Greece and the United Kingdom provided adequate, if not superior, alternative forums for the prosecution of the Warn appellants's claims. On appeal, the Warn appellants do not seriously challenge the district court's finding that a Greek forum would provide better access to the necessary witnesses and evidence, or its finding that either of the foreign forums would be more adept at applying its own law. Nor do the Warn appellants challenge the district court's finding that Greece possesses a greater interest in the death of two of its citizens in its coastal waters, and the United Kingdom possesses a greater interest in the death of two British sailors and the injury of a third employed aboard a British-flagged ship, than the interest possessed by the United States in this suit brought by foreign citizens against a foreign ship owned by a foreign corporation with a foreign beneficial owner. Nor do the Warn appellants respond to the Maridome appellees's contention that Greece provides the only forum in which the Greek government and authorities can be impleaded for contributory negligence.
 
 
 20
 Instead, the Warn appellants assert that the district court failed to give sufficient deference to their choice of forum as parties proceeding in rem in an admiralty action. The district court, however, responded more than adequately to the particular concerns presented by an in rem admiralty action. The district court ensured that the Maridome appellees would appear in the foreign forum chosen by the Warn appellants by conditioning the forum non conveniens dismissal upon (1) the submission of the Maridome appellees to the jurisdiction of the foreign forum of choice, (2) the acceptance of jurisdiction by that foreign forum, and (3) the posting of any required security by the Maridome. See Perusahaan Umum Listrik Negara v. M/V Tel Aviv, 711 F.2d 1231, 1237-39 (5th Cir.1983) (noting that the requisite adequate alternative forum permitting dismissal for forum non conveniens generally will not exist in an in rem admiralty action unless the dismissal is conditioned upon submission to foreign jurisdiction and the posting of security).
 
 
 21
 Simply put, we agree with the district court's conclusion that the courts of either Greece or the United Kingdom provide more appropriate forums for the prosecution of the Warn appellants's claims under the laws of those two nations.
 
 V
 
 22
 Finally, "because we agree with the district court's conclusion that foreign law and not the Jones Act should apply, and conclude that the district court did not abuse its discretion in dismissing the [Warn appellants's] claim[s] for forum non conveniens, we cannot say that the court's denial of reconsideration ... constitutes an abuse of discretion." Villar, 782 F.2d at 1483.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The Honorable Frank C. Damrell, Jr., United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 Panagiotis Stathopoulos, Robert Stathopoulos, Vera Maria Brigman, and Ilona Brigman-Thiel subsequently moved to withdraw from the appeal. We granted their motion; only the remaining Warn appellants are involved in this appeal
 
 
 [2]
 Lauritzen indicates that the law of the forum is largely irrelevant, see 345 U.S. at 591, 73 S.Ct. 921 (stating that "there would be no justification for altering the law of the controversy just because local jurisdiction of the parties is obtainable"), and our cases are in accord, see, e.g., Pereira v. Utah Transport, Inc., 764 F.2d 686, 689 (9th Cir.1985) (same)
 
 
 [3]
 As we noted in Villar, "[w]e need not decide which nation's law should ultimately be applied to the merits in this case." 782 F.2d at 1482
 
 
 [4]
 The Warn appellants do not appear to appeal from the dismissal of their other claims under United States maritime law. However, "[t]he analysis is the same for determining the applicability of the Jones Act and of general United States maritime law." Bilyk, 754 F.2d at 1543; see also DeMateos v. Texaco, Inc., 562 F.2d 895, 900 (3d Cir.1977) (applying Lauritzen analysis to claims under Death on the High Seas Act). Thus, if we were to review the dismissal of the Warn appellants's other claims under United States maritime law (which seemingly include their negligence and strict products liability claims brought against Boston Whaler "pursuant to the Admiralty and Maritime Laws of the United States," as the Verified First Amended Complaint states), the result would be the same