Santiago **PEREIRA**, Plaintiff-Appellant,

v.

**UTAH TRANSPORT, INC. and Utah Shippers, Inc.,** Defendants-Appellees.

No. 83–2537.

United States Court of Appeals, Ninth Circuit.

Argued Dec. 12, 1984.

Submitted March 8, 1985.

Decided June 27, 1985.

Arram G. Adler, Adler & Kops, Philadelphia, Pa., for plaintiff-appellant.

Thomas G. Scarvie, Lillick, McHose & Charles, San Francisco, Cal., for defendants-appellees.

Before WRIGHT, POOLE and WIGGINS, Circuit Judges.

POOLE, Circuit Judge:

Santiago Pereira appeals from the district court's dismissal of his action brought under the Jones Act, 46 U.S.C. § 688. Pereira, a Spanish national, was injured aboard the LAKE MENDOCINO, which flies the Liberian flag. Pereira brought suit in the Northern District of California against the vessel's owners, Utah Transport, Inc. and Utah Shippers, Inc. ("Utah"), both of which are Liberian corporations with San Francisco offices. Utah moved to dismiss for *forum non conveniens*. The district court dismissed the action in favor of litigation under Spanish jurisdiction. Pereira contends that the Jones Act applies to the motion to dismiss. We affirm.

FACTS AND PROCEEDINGS

Appellant Santiago Pereira, a Spanish citizen and domiciliary, was hired in December 1977 in Spain, by a Spanish manning agent to serve as a crewman on the vessel M/V LAKE MENDOCINO. The ship, which sails under the Liberian flag, is owned by Utah Transport, Inc., and Utah Shippers, Inc.[1], Liberian corporations whose offices are in San Francisco. His employment contract was executed in Spain and provided that all disputes would be subject to the law of the flag.

---

1. Utah Shippers, Inc. maintains that it has never owned, operated or controlled the LAKE MENDOCINO.

Pereira was injured by a Japanese-manufactured device while the ship was off the coast of Thailand. He obtained medical treatment in Thailand and later in Spain. At the time of the injury the LAKE MENDOCINO was en route from Japan to Singapore. The ship visited the United States only infrequently, and had not called on an American port since January 1979, eleven months prior to Pereira's injury.

Pereira filed his complaint against Utah in the Northern District of California under the Jones Act, 46 U.S.C. § 688. Utah moved to dismiss for *forum non conveniens*. In a written memorandum opinion, the district court concluded that Liberian law should apply and that Spain was the most convenient forum. The court dismissed on the condition that Utah subject itself to Spanish jurisdiction. Pereira appeals, claiming that American law applies and that the dismissal was improper.

## DISCUSSION

### Applicability of Jones Act

Pereira contends that the Jones Act, rather than Liberian law, applies to the present case. Utah disagrees, but argues that this court need not reach the choice of law issue, since it is unnecessary for a court to determine whether American or foreign law applies before dismissing a case for *forum non conveniens*. The Ninth Circuit cases cited by Utah, however, do not involve the Jones Act. *See, e.g., Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983) (case involving airline crash in Taiwan dismissed for *forum non conveniens* with no discussion of choice of law). Utah also cites *Rodriguez v. Flota Mercante Grancolombiana, S.A.*, 703 F.2d 1069, 1075 (9th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 84, 78 L.Ed.2d 94 (1983), to support its contention that a choice of law analysis is unnecessary in deciding whether to dismiss on the basis of *forum non conveniens*.

In *Rodriguez*, a Colombian seaman asserted Jones Act and general maritime causes of action. The shipowner moved to dismiss for lack of subject matter jurisdiction or, alternatively, for *forum non conveniens*. The district court dismissed without stating its reasons. The court affirmed the dismissal of the Jones Act cause, but remanded to the district court for explication of its reasoning in dismissing the general maritime cause. *Id.* Contrary to Utah's contention, the court did not consider whether choice of law analysis was necessary before dismissing for *forum non conveniens*.

The Second Circuit has held that a choice of law determination is not involved in a *forum non conveniens* analysis. *Cruz v. Maritime Co. of Philippines*, 702 F.2d 47, 48 (2d Cir.1983). Other circuits have held that in order to apply the *forum non conveniens* doctrine in a Jones Act case, a court must conduct a choice of law of analysis. These cases state that if American law applies, the court may not dismiss the case in favor of a foreign court for *forum non conveniens*. *Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 289, 292–93 (5th Cir.1984); *Needham v. Phillips Petroleum Co. of Norway*, 719 F.2d 1481, 1483 (10th Cir.1983); *Szumlicz v. Norwegian American Line, Inc.*, 698 F.2d 1192, 1195 (11th Cir.1983). *See also*, Edelman, *Forum non Conveniens: Its Application in Admiralty Law*, 15 J. of Maritime Law and Commerce 517, 529–32 (1984).

■ The district court here did not clearly distinguish between the choice of law and *forum non conveniens* issues; rather, its decision was based both on a weighing of *forum non conveniens* factors and on its conclusion that Liberian law applies. We agree with the Fifth, Tenth and Eleventh Circuits that a choice of law determination must be made before a district court dismisses a case under *forum non conveniens*.[2]

---

**2.** Although we find that the district court erred in failing to apply a choice of law analysis before dismissing for *forum non conveniens*, we may affirm its decision on any basis fairly presented by the record. *Childs v. Local 18, International Brotherhood of Electrical Workers*, 719 F.2d 1379, 1384 (9th Cir.1983).

■ The district court's conclusion that Liberian law, rather than the Jones Act, governs the instant case is a question of law subject to *de novo* review by this court. *Phillips v. Amoco Trinidad Oil Co.,* 632 F.2d 82, 84 (9th Cir.1980), *cert. denied,* 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981).

■ The relevant considerations for Jones Act choice of law determinations have been set forth in *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). *Lauritzen* listed seven factors to be considered in deciding whether the Jones Act applies: (1) place of the wrongful act; (2) law of the flag; (3) allegiance or domicile of the injured party; (4) allegiance of the shipowner; (5) place of the contract; (6) inaccessibility of foreign forum; and (7) law of the forum. 345 U.S. at 583–92, 73 S.Ct. at 928–33. *Rhoditis* expanded on the *Lauritzen* test by stating that the seven-factor list "was not intended as exhaustive," and that the test was "not a mechanical one." 398 U.S. at 308–09, 90 S.Ct. at 1733–34. In holding the Jones Act applicable, the *Rhoditis* court noted that the shipowner's base of operations should also be considered. 398 U.S. at 309, 90 S.Ct. at 1734.

The first *Lauritzen/Rhoditis* factor, the place of injury, is often of little help. *Lauritzen,* 345 U.S. at 584, 73 S.Ct. at 929. The fact that in the present case the injury occurred while the ship was in the waters off Thailand appears to be of little significance.

The second factor, law of the flag, is of "cardinal importance." *Id.* The LAKE MENDOCINO flew the Liberian flag, and this fact should be accorded great weight in the choice of law analysis.

The third factor, allegiance or domicile of the injured, is also an important consideration. *Id.* at 586, 73 S.Ct. at 930. Pereira is a Spanish national.

The fourth factor, allegiance of the shipowner, may be misleading. "[I]t is common knowledge that in recent years a practice has grown, particularly among American shipowners, to avoid stringent shipping laws by seeking registration eagerly offered by some countries." *Id.* at 587, 73 S.Ct. at 931. The shipowners in the present case are Liberian corporations, but their offices are in San Francisco.

The fifth factor, place of contracting, is a relatively unimportant consideration. *Id.* at 588–589, 73 S.Ct. at 931–932. It is significant, however, that the contract provided that the law of the flag would apply. *Id.*

The sixth factor, inaccessibility of the foreign forum, was carefully considered by the district court. Having reviewed the record, we find the district court reasonably concluded that the foreign forum, Spain, was readily accessible to Pereira, and in conditioning its dismissal to insure that Pereira may return to this forum should the Spanish courts decline jurisdiction.

Both parties discount the importance of the seventh factor, law of the forum. As stated in *Lauritzen,* the fact that an American forum has perfected jurisdiction over the parties is no justification for imposing American law on a case that may have little connection to the United States. *Id.* at 590–92, 73 S.Ct. at 932–33.

The final consideration is the "base of operations" test added by *Rhoditis,* 398 U.S. at 309–10, 90 S.Ct. at 1734–35. Pereira contends, and Utah does not dispute, that Utah's operations are conducted out of San Francisco. Utah points out, however, that unlike the ship in *Rhoditis,* the LAKE MENDOCINO rarely called on an American port. Pereira counters that his contract obligated him to serve on whatever ship Utah assigned him to, and that other of Utah's ships frequently visited America. Pereira urges this court to "pierce the veil of the flag" and hold Utah liable under the Jones Act.

Pereira's "base of operations" argument confronts two significant factors supporting the district court's conclusion that Liberian law applies. First, the law of the flag

is the "most venerable and universal rule of maritime law." *Lauritzen*, 345 U.S. at 584, 73 S.Ct. at 929. The LAKE MENDO-CINO flies the Liberian flag. Second, the contract provided that the law of the flag govern all disputes. These considerations outweigh the fact that Utah is based in San Francisco, especially in light of the fact that the LAKE MENDOCINO rarely called on an American port.

*Forum Non Conveniens*

[4] We review a district court's dismissal of a case for *forum non conveniens* for abuse of discretion. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 237, 102 S.Ct. 252, 256, 70 L.Ed.2d 419 (1981). The district court should balance various "public interest" and "private interest" factors in deciding a *forum non conveniens* question, as outlined in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). A district court abuses its discretion if it fails to balance the relevant factors. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1334 (9th Cir. 1984).

■ The private interest factors include: (1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining attendance of willing witnesses; (3) possibility of viewing subject premises; (4) all other factors that render trial of the case expeditious and inexpensive. *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. at 843.

■ The public interest factors include: (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; (5) the avoidance of unnecessary problems in conflicts of law. *Id.*

■ In the present case, the district court analyzed the relevant public and private interest factors, and concluded that

Spain is the forum most convenient for the instant litigation. The court conditioned its dismissal on Utah's submission to the jurisdiction of the Spanish courts, and waiver of any statutes of limitation defenses that Utah might have. The district court did not abuse its discretion in balancing the relevant factors and dismissing Pereira's action.

The judgment is AFFIRMED.