Moussa DALLA, Plaintiff-Appellee,

v.

ATLAS MARITIME CO.,
Defendant-Appellant.

No. 83–6370.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 1983.

Decided Sept. 17, 1985.

Herbert C. Rubinstein, Santa Monica, Cal., for plaintiff-appellee.

Samuel A. Keesal, Jr., Keesal, Young & Logan, Long Beach, Cal., for defendant-appellant.

Before GOODWIN, FLETCHER and PREGERSON, Circuit Judges.

PER CURIAM.

Moussa Dalla was injured while working aboard a Greek vessel at port in Long Beach, California. He recovered judgment under the Jones Act, 46 U.S.C. § 688 (1982), and the vessel operator appeals. *See Dalla v. Atlas Maritime Co.*, 562 F.Supp. 752 (C.D.Cal.1983). We affirm.

The vessel operator contends that the Jones Act does not afford Dalla a cause of action because of the paucity of connec-

tions between Atlas Maritime Co. and the United States. Although Dalla's injury took place in the United States, Dalla is a Syrian national, and the vessel is of Greek registry and is operated by a Liberian corporation. Whether a claim has been stated under the Jones Act is a question of law subject to de novo review. *Bilyk v. Vessel Nair*, 754 F.2d 1541, 1542 (9th Cir.1985); *Rodriguez v. Flota Mercante Grancolombiana, S.A.*, 703 F.2d 1069, 1071 n. 2 (9th Cir.), *cert. denied*, ⸺ U.S. ⸺, 104 S.Ct. 84, 78 L.Ed.2d 94 (1983); *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82, 84 (9th Cir.1980), *cert. denied*, 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981).

When, as in this case, a foreign seaman brings an action in the United States against a foreign vessel operator as an employer, it is not always clear whether the Jones Act applies. The Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), listed seven factors for determining whether the employer in a seaman's maritime action is subject to the Jones Act: (1) the place of the wrongful act, (2) the law of the flag, (3) allegiance or domicile of the injured party, (4) allegiance of the shipowner, (5) the place of the contract, (6) accessibility of a foreign forum, and (7) law of the forum. *Id.* at 583–92, 73 S.Ct. at 928–933.

■ The Court later expanded the *Lauritzen* list and held that a shipowner's base of operations should also be considered. *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 309, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252 (1970). The *Rhoditis* Court noted that the factors enumerated in *Lauritzen* and *Rhoditis* are "not intended as exhaustive," and should not be applied mechanically. *Id.* at 308–09, 90 S.Ct. at 1734. A vessel on which an injury occurred has a base of operations in the United States if it has substantial and continuing contacts with this country. These contacts cannot be defined so loosely that every alien seaman who happens to be injured in United States territorial waters has a right to bring an action against his alien employer in American courts, nor so rigidly that an "alien owner, engaged in an extensive business operation in this country, may have an advantage over citizens engaged in the same business by allowing him to escape the obligations and responsibility of a Jones Act 'employer.'" *Id.* at 310, 90 S.Ct. at 1734. *See Pereira v. Utah Transport, Inc.*, 764 F.2d 686, 688 (9th Cir.1985).

■ In the case at bar, the trial judge determined that the employer's base of operations was in the United States. During the trial, the judge, no doubt with the facts in *Rhoditis* in mind, asked counsel to identify the owners of the employer's vessel. Counsel, apparently unwilling to disclose that information, dodged the question by saying "Atlas has a permanent management arrangement of the ships...." To this nonresponsive answer, the judge applied common sense and concluded that the vessel's owners are United States nationals. He also concluded that the vessel had substantial and continuing contacts with this country and virtually none with Liberia. Determining the base of operations is a factual finding which we will not disturb on review unless clearly erroneous. *See Szumlicz v. Norwegian America Line, Inc.*, 698 F.2d 1192, 1196 (11th Cir.1983).

■ The contacts with Greece in this case appear to be little different from those in *Rhoditis*. There, the Supreme Court held that a Greek seaman, injured in the port of New Orleans on a Greek vessel, owned by a Greek corporation, was covered by the Jones Act. *Rhoditis*, 398 U.S. at 310, 90 S.Ct. at 1734.

The district court's finding concerning the vessel's base of operations was not clearly erroneous. The court concluded that the *Lauritzen* and *Rhoditis* factors militated in favor of starting a Jones Act claim not only because the vessel's base of operations is in the United States but also because the vessel's owners were apparently United States nationals and the injury

occurred within the United States. In the context of the facts of this case, the trial judge correctly accorded significant weight to those factors and comparatively less weight to the vessel's flag and to the nationality of the injured party and the vessel's operator.

This court's recent opinion in *Pereira* is not inconsistent with the trial judge's conclusion. In *Pereira*, the injury occurred on the high seas; the vessel rarely visited United States ports; and the vessel was apparently owned by Liberian corporations with no indication of the identity of the principals. Although the *Pereira* court found that the vessel's owner had a base of operations in the United States, that factor alone was not dispositive. *Pereira*, 764 F.2d at 689–90. The other *Lauritzen* and *Rhoditis* factors, absent in *Pereira*, favor holding the employer subject to the Jones Act in this case. *See also Bilyk*, 754 F.2d at 1543–45 (*Rhoditis* factors did not justify application of Jones Act to injury of United States citizen on the high seas while in the employ of a Mexican flag vessel with Mexican owners and with little or no United States contacts).

The employer raises other points which require little if any comment. The trial judge did encourage settlement at the close of plaintiff's case, but nothing in the record reveals that the trial judge harbored any bias or vindictive reaction against the employer as a result of the parties' failure to settle. Although the employer claims that he failed to call some witnesses because of reliance upon tentative comments by the court, the record fails to show that any additional witnesses would have been called, or that if they had been called, they would have had anything to contribute to the case. Finally, we are satisfied that in light of the 70 per cent contributory negligence figure for which the employer argued and the 17 per cent figure for which the seaman argued, the trial court's finding of 35 per cent is not clearly erroneous.

Affirmed.