Nenita S. VILLAR, individually and as personal representative of Renerio Z. Villar, deceased; Josephine Villar, Gerardo Villar; Reynaldo Villar; and Renerio Villar, Jr., Plaintiffs-Appellants,

v.

CROWLEY MARITIME CORPORATION; Genstar Marine, Inc.; and Saudi Arabia Transport Organization, Defendants-Appellees.

No. 84–2474.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1985.

Decided Feb. 14, 1986.

Benton Musslewhite, Houston, Tex., for plaintiffs-appellants.

Ernest N. Reddick, Derby, Cook, Quinby & Tweedt, San Francisco, Cal., for defendants-appellees.

Before WALLACE, HUG, and SCHROEDER, Circuit Judges.

WALLACE, Circuit Judge:

The wife and children (the Villars) of Renerio Villar (the decedent) appeal the district court's orders dismissing their action brought under the Jones Act, 46 U.S.C. § 688, on grounds of forum non conveniens and denying their motion for a new trial and reconsideration. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

In March 1977, the decedent drowned off Saudi Arabia while attempting to secure *Barge 204,* which had broken loose from its buoy mooring line. The decedent was a citizen and domiciliary of the Philippines, entered into his employment contract while in the Philippines, and was a crew member of the tugboat *Bannock,* which was conducting a lighterage operation in Saudi Arabian waters.

After the decedent's death, the Villars filed a claim in district court alleging that Crowley Maritime Corporation, GTO Corporation, the Saudi Arabian Transport Organization, and a number of other corporations (collectively the corporations) were the decedent's "employer" under the Jones Act, and that the corporations' negligence and the *Bannock's* unseaworthiness were the proximate causes of the decedent's death. The corporations moved for summary judgment, contending that Philippine law applied and that the case should be dismissed for forum non conveniens. After requesting additional discovery and briefing on the motion, the district court held that the case should be tried in the Philippines and dismissed the action on the ground of forum non conveniens.

The Villars appealed, and in an unpublished disposition we reversed and remanded the case to the district court for entry of a written order analyzing the private and public interest factors articulated in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). (*Gulf Oil*). The district court entered the requested written order, held that Philippine law rather than the Jones Act should apply, and again dismissed the action for

forum non conveniens. The district court conditioned its dismissal, however, on the corporations' agreement to waive all jurisdictional, venue, and statute of limitation defenses in any claim based on the decedent's death that is brought by the Villars in the Philippines. The Villars' motion for a new trial and for reconsideration pursuant to rules 59 and 60, Fed.R.Civ.P., was denied, and they appealed.

II

■ A preliminary question should be addressed before we examine the choice of law and forum non conveniens issues. The Villars argue that the district court erred in making factual findings to determine the choice of law issue. They contend that there are disputed issues of fact concerning the decedent's true employer and the location of its day-to-day decisionmaking, both of which are necessary elements of a choice of law determination. *See Lauritzen v. Larsen,* 345 U.S. 571, 583–92, 73 S.Ct. 921, 928–33, 97 L.Ed. 1254 (1953) (*Lauritzen*). They argue that these factual issues could only be decided at trial.

■ We disagree. A district court is required to make a choice of law determination prior to dismissing a case for forum non conveniens. *Pereira v. Utah Transport, Inc.,* 764 F.2d 686, 688 (9th Cir.1985) (*Pereira*). To do so, a district court may have to resolve disputed factual issues involved in the choice of law determination before a trial on the merits. *See Vaz Borralho v. Keydril Co.,* 696 F.2d 379, 385–87 (5th Cir.1983).

At first blush, it seems strange to allow pretrial findings of disputed factual issues, but the result of a contrary conclusion is completely unacceptable: a determination that a particular forum is inconvenient could not be made until after the trial was underway. The latter alternative would defeat the purposes of the forum non conveniens doctrine. Consequently, the district court did not err in addressing issues that involved disputed factual findings of the decedent's true employer and the loca-

tion of its day-to-day decisionmaking. We now turn to the district court's choice of law determination.

## III

■ The Villars contend that the district court erred in holding that Philippine law and not the Jones Act applies to their claim. We review the district court's choice of law determination de novo. *Pereira*, 764 F.2d at 689. We review the district court's factual findings under the clearly erroneous standard. *United States v. McConney*, 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied*, — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *see also Fisher v. Agios Nicolaos V*, 628 F.2d 308, 318 (5th Cir.1980) (applying clearly erroneous standard to finding as to location of "base of operations").

The Supreme Court in *Lauritzen* outlined seven factors for determining if a claim is subject to the Jones Act: (1) place of the wrongful act; (2) the flag of the vessel; (3) allegiance or domicile of the injured party; (4) allegiance of the shipowner; (5) place and choice of law of the contract; (6) accessibility of a foreign forum; and (7) law of the forum. *Lauritzen*, 345 U.S. at 583–92, 73 S.Ct. at 928–33. The Court further emphasized in *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970) (*Rhoditis*), that the *Lauritzen* test should not be applied in a mechanical fashion and that its list of seven factors was not intended to be exhaustive. *Id.* at 308–09, 90 S.Ct. at 1733–34. Consequently, in *Rhoditis* the Court concluded that the "base of operations" is a factor that also should be considered. *Id.* at 309, 90 S.Ct. at 1734.

The first *Lauritzen* factor, the place of injury, typically is not emphasized because vessels frequently navigate over a large number of waters that are subject to a variety of different legal authorities. *Lauritzen*, 345 U.S. at 583–84, 73 U.S. at 928–29. The place of injury, however, takes on more significance if the vessel is not a typical blue-water vessel because the place of the wrongful act is no longer merely

fortuitous. *See Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82, 87 (9th Cir.1980) (*Phillips*), *cert. denied*, 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981); *see also Koke v. Phillips Petroleum Co.*, 730 F.2d 211, 219–20 (5th Cir.1984) (*Koke*); *Chiazor v. Transworld Drilling Co.*, 648 F.2d 1015, 1018–19 (5th Cir.1981) (*Chiazor*), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982).

The corporations allege that the place of injury is significant since the decedent was employed specifically to work in a lighterage operation conducted in Saudi Arabian waters. He was flown to Saudi Arabia from the Philippines and his employment contract provided that at its termination he would be flown back to the Philippines. The corporations contend further that the *Bannock* was stationed in Saudi Arabia during the entire time the decedent was a crew member, that it remained there for another two years after his death, and that it has never traveled to or from the United States. The Villars, on the other hand, contend that the decedent's contract did not restrict him to working on a vessel confined to Saudi Arabian waters, that the *Bannock* is a typical blue-water vessel, and that *Phillips, Koke*, and *Chiazor* are inapposite because they involved stationary oil drilling vessels or vessels that were incapable of navigating on the open seas.

We need not resolve whether a blue-water vessel engaged in maritime operations limited to a specific geographic area should be treated in the same manner as a stationary vessel since the injury in this case did not occur in the navigable waters of either the Philippines or the United States, the potential forums involved in this case. *See Cuevas v. Reading & Bates Corp.*, 577 F.Supp. 462, 465 (S.D.Texas 1983), *aff'd*, 770 F.2d 1371 (5th Cir.1985). Even if we were to give place of injury added significance, under these facts it would point to application of Saudi Arabian law.

The second factor identified in *Lauritzen*, the flag of the vessel, is of "cardinal importance," *Lauritzen*, 345 U.S. at 584, 73 S.Ct. at 929, and "should be accorded great

weight in the choice of law analysis." *Pereira*, 764 F.2d at 689. The district court found that the *Bannock* was a Panama-flag vessel. The Villars contend that the decedent was temporarily assigned to *Barge 204*, which was registered in and flew the flag of the United States. We do not find this argument persuasive since at the time of his death the decedent was functioning within the course and scope of his employment as a crew member of the *Bannock; Barge 204*'s flag is irrelevant since at no time was the decedent a member of its crew.

The third factor, allegiance or domicile of the injured party, is also an important consideration, *Pereira*, 764 F.2d at 689, because each nation has a strong interest in protecting its citizens from being "maimed or disabled." *Lauritzen*, 345 U.S. at 586, 73 S.Ct. at 930. It is undisputed that the decedent was both a citizen and a domiciliary of the Philippines.

The fourth factor, allegiance of the shipowner, can be difficult to determine. American shipowners often register their vessels in foreign countries to avoid the stringent shippers laws of the United States. *Id.* at 587, 73 S.Ct. at 930. Thus, if it is necessary, we can look through the facade of foreign registration and incorporation to find the true ownership of the vessel. *Id.; Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437, 442 (2d Cir.), *cert. denied*, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959). The Villars contend that the *Bannock* was registered in Panama only for convenience and that the true owner is GTO Corporation, which is headquartered in San Francisco. The corporations contend that Americans owned only one-third of GTO Corporation at the time of the decedent's death and that the remaining two-thirds was owned by Canadians.

We need not decide if it is appropriate to pierce the corporate veil and consider the Canadian shareholders as the true owners. *Cf. Chiazor*, 648 F.2d at 1018; *DeMateos v. Texaco, Inc.*, 562 F.2d 895, 902 (3d Cir. 1977) (*DeMateos*), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978).

Even assuming that we should not pierce the veil and that this factor suggests application of American law, "it does not follow that the application of American law is required ... [where] the only contact with the United States remains ultimate American ownership or control of the business ventures." *Koke*, 730 F.2d at 219–20, *quoting Bailey v. Dolphin International, Inc.*, 697 F.2d 1268, 1277–78 (5th Cir.1983); *Chiazor*, 648 F.2d at 1019. Other factors point powerfully to the application of foreign law.

The fifth factor, place of contract, is given little or no weight in maritime tort choice of law determinations since in most instances the location is fortuitous. *Lauritzen*, 345 U.S. at 588, 73 S.Ct. at 931; *Pereira*, 764 F.2d at 689. The decedent entered into his employment contract while in the Philippines. Choice of law expressed in the contract may be much more important. *See Lauritzen*, 345 U.S. at 588–89, 73 S.Ct. at 931; *Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512, 1517 & n. 7 (11th Cir.1985); *Pereira*, 764 F.2d at 689, *cf. The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13–15 & n. 15, 92 S.Ct. 1907, 1914–16 & n. 15, 32 L.Ed.2d 513 (upholding contractual selection of forum and forum-law "absent a strong showing that it should be set aside."). The decedent's employment contract provided that Philippine law would apply unless the law of the vessel's country of registration was more favorable. *Cf. Pereira*, 764 F.2d at 689. The district court thus determined that according to the terms of the contract Philippine law should apply. The Villars do not contend on appeal that Philippine law is less favorable than Panamanian law.

The sixth factor, accessibility of a foreign forum, also does not support application of the Jones Act. *See id.* The district court conditioned the dismissal of the Villars' claim on the corporations' agreement to waive all jurisdictional, venue, and statute of limitations defenses that they might have should the Villars assert a claim based on the decedent's death in the Philippines. No argument has been made that

this would not adequately guarantee the Villars access to the Philippine forum.

The seventh factor, law of the forum, is not one of great weight in a choice of law determination. *Id.* Thus, merely because the district court has jurisdiction over the parties involved in this claim does not necessarily support application of the Jones Act. *Lauritzen,* 345 U.S. at 590–92, 73 S.Ct. at 932–33.

The final factor is the "base of operations" test articulated in *Rhoditis,* 398 U.S. at 309–10, 90 S.Ct. at 1734. We must examine the base of operations of both the shipowners and the vessel. *Nicol v. Gulf Fleet Supply Vessels, Inc.,* 743 F.2d 289, 296 (5th Cir.1984). The Villars contend that GTO Corporation's base of operations is the United States, while the corporations contend that the lighterage activity's day-to-day base of operations was Saudi Arabia. The district court did not make a specific factual finding on this point, but even assuming that GTO Corporation's base of operations is in the United States, under these facts that alone is not a sufficient basis to apply the Jones Act. *Cf. Koke,* 730 F.2d at 219–20; *Chiazor,* 648 F.2d at 1018–19; *DeMateos,* 562 F.2d at 902. Furthermore, the vessel's base of operations was limited to the waters off the coast of Saudi Arabia, and the vessel was not "earning income from cargo originating or terminating" in the United States. *Rhoditis,* 398 U.S. at 310, 90 S.Ct. at 1734. The base of operations test favors application of Saudi Arabian law, and not the Jones Act.

After examining all of the factors necessary to a choice of law determination, we conclude that as between foreign law and the Jones Act, foreign law should apply to the Villar's claim. We need not decide which nation's law should ultimately be applied to the merits in this case. For the purpose of the forum non conveniens analysis, it is enough to conclude that the United States does not have a sufficient interest to require applying American law over that of the Philippines, Saudi Arabia, or Panama.

## IV

The Villars further contend that even if the Jones Act does not apply, the district court abused its discretion in dismissing their case for forum non conveniens. We review a district court's dismissal of a case for forum non conveniens for abuse of discretion. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981) (*Piper Aircraft*); *Pereira,* 764 F.2d at 690. A district court abuses its discretion if it fails to balance the public and private interest factors outlined in *Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. at 843. *Pereira,* 764 F.2d at 690; *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1334 (9th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985).

### A.

The relevant private interest factors identified in *Gulf Oil* include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained.

*Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843.

The district court concluded that the Villars are citizens and domiciliaries of the Philippines and thus live closer to a Philippine forum than to an American forum. The court emphasized that, while a view of the accident's location is probably unnecessary, a Philippine forum is much closer to Saudi Arabia and would result in easier access to relevant sources of proof than would an American forum. The district court recognized that the Villars' choice of an American forum may be given less weight because they are not United States citizens, *Piper Aircraft,* 454 U.S. at 256 n. 23, 102 S.Ct. at 266 n. 23, but did condition

the dismissal of their action on the corporations' willingness not to object on the basis of certain defenses to the presentation of the claim by the Villars in the Philippines. Finally, the court considered the possible lack of compulsory process in the Philippines, the cost of obtaining witnesses, and the convenience of a Philippine forum, and concluded that the private interest factors indicate that the Villars' claim should be heard in a Philippine rather than an American forum.

The pertinent public interest factors outlined in *Gulf Oil* include the administrative difficulties of a congested court system; the imposition of jury duty on the people of a community that has no relation to the litigation; the local interest in having localized controversies decided at home; and the appropriateness in having the trial of a diversity case in a forum that is at home with the law that governs the case. *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. at 843.

The district court examined the public interest factors and concluded that choice of law analysis points to application of Philippine law and that a Philippine forum could apply Philippine law with more ease than could an American court. We agree that foreign law should apply. However, we need not determine whether Philippine law rather than Saudi Arabian or Panamanian law should apply because there is no reason to believe that American courts would be more capable of applying Saudi Arabian or Panamanian law than Philippine courts should it be determined that either law applies. We also agree with the district court's conclusions that the Philippines has a powerful interest in deciding the controversy because of its strong contacts with both the decedent and the Villars, and that American jurors and court personnel have little interest in this controversy. The district court concluded that the public interest factors point to a Philippine forum.

We find no substance to the Villars' argument that the district court abused its discretion. To the contrary, the district court properly considered the private and public interest factors outlined in *Gulf Oil* and correctly concluded that the Villars' claim should be dismissed for forum non conveniens.

### B.

■ As a final argument, the Villars contend that, even if the public and private interest factors favor a Philippine forum, 46 U.S.C. § 764 requires that the Jones Act apply to this claim, that 46 U.S.C. § 764 and the Shipowner's Liability (Sick and Injured Seaman) Convention of 1936, 54 Stat. 1693, T.S. No. 951, demonstrate that the district court abused its discretion in dismissing their case, and that passive negligence occurred in the United States which requires the district court to retain jurisdiction over the American defendants. We do not consider these arguments on appeal, however, because the Villars failed to raise them in the district court, and have failed to present evidence of exceptional circumstances warranting an exception to the general rule that questions not raised in the district court will not be considered on appeal. *Singleton v. Wulff*, 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir.), *cert. denied*, 464 U.S. 1017, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983); *Michael-Regan Co. v. Lindell*, 527 F.2d 653, 656 (9th Cir.1975); *Rothman v. Hospital Service of Southern California*, 510 F.2d 956, 960 (9th Cir.1975).

Futhermore, because we agree with the district court's conclusion that foreign law and not the Jones Act should apply, and conclude that the district court did not abuse its discretion in dismissing the Villar's claim for forum non conveniens, we cannot say that the court's denial of reconsideration and of a new trial constitutes an abuse of discretion. *See Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board of Culinary Workers*, 542 F.2d 1076, 1085 (9th Cir.1976), *cert. denied*, 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977).

AFFIRMED.