783 F.2d 951
 John J. TEIXEIRA, Sr., John J. Teixeira, Jr., James P. Lira,
Merritt Noel, Henderikus Van Der Es, Anthony
Sabatinia, George Tucker and Joao
Batista, Plaintiffs,
v.
VAN CAMP SEAFOOD COMPANY, a DIVISION OF RALSTON PURINA
COMPANY; and M/V AMERICAN EAGLE, Defendants.
 No. 84-6643.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 4, 1986.
Decided Feb. 27, 1986.
 
 Howard D. Sacks, Los Angeles, Cal., for plaintiffs.
 David E. Gilbert, Robert G. Dyer, Dyer, Brewer & Walton, San Diego, Cal., for defendants.
 An Appeal from the United States District Court Southern District of California.
 Before ANDERSON and PREGERSON, Circuit Judges, and SOLOMON,* Senior District Judge.
 PREGERSON, Circuit Judge:
 
 
 1
 The captain and crew of the tuna fishing vessel American Eagle ("the ship") sued Van Camp Seafood Co. ("Van Camp") and the ship in admiralty for unpaid wages and wrongful discharge. The plaintiffs alleged that certain ship expenses had been improperly charged to their wages under identical individual "share" or "lay" contracts of employment.[1] The district court found for the defendants. We affirm.
 
 
 2
 We will not set aside a district court's findings of fact unless they are clearly erroneous. Dalla v. Atlas Maritime Co., 771 F.2d 1277, 1278 (9th Cir.1985) (per curiam). A finding of fact is clearly erroneous only if, on viewing the entire record, we are left with the definite and firm conviction that the district court made a mistake. Taylor v. Moram Agencies, 739 F.2d 1384, 1385-86 (9th Cir.1984).
 
 
 3
 The district court found that NAPAC Fishing Company, Inc. ("NAPAC"), a Puerto Rico corporation, was the crew's employer, and that Van Camp could not be liable for any unpaid wages in any event. The employment contracts all expressly identify NAPAC as the crew's employer, and are signed by NAPAC's vice-president and managing agent. NAPAC was neither named as a defendant in this action nor served by the crew. Uncontradicted testimony at trial established that Van Camp served only as a "husbanding agent" for NAPAC.[2] As a husbanding agent, Van Camp is not the ship's owner pro hac vice and is not liable to the crew as their employer. See Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 800-01, 69 S.Ct. 1317, 1326, 93 L.Ed. 1692 (1949); Volyrakis v. M/V Isabelle, 668 F.2d 863, 866 (5th Cir.1982); Burie v. Overseas Navigation Corp., 205 F.Supp. 182, 186 (S.D.N.Y.1962), aff'd mem., 323 F.2d 873 (2d Cir.1963), cert. denied, 377 U.S. 904, 84 S.Ct. 1163, 12 L.Ed.2d 175 (1964).
 
 
 4
 The crew argues that both NAPAC and Van Camp have no separate corporate existence independent of Ralston Purina, their common ultimate parent corporation. No evidence of alter ego was offered at trial, and no evidence was provided to us to suggest that either NAPAC or Van Camp is not an independent business entity.
 
 
 5
 The crew named the ship in their complaint. A ship may be liable in rem for seamen's unpaid wages. See The John G. Stevens, 170 U.S. 113, 119, 18 S.Ct. 544, 546, 42 L.Ed. 969 (1898); Gerber v. Spencer, 278 F. 886, 890 (9th Cir.1922). However, no warrant was ever issued for the ship, and "[i]n absence of an arrest, no decree in rem can be rendered against the res." Alyeska Pipeline Service Co. v. The Vessel Bay Ridge, 703 F.2d 381, 384 (9th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 3526, 82 L.Ed.2d 852 (1984); see Fed.R.Civ.P. C (Supplemental Rules for Admiralty and Maritime Claims).
 
 
 6
 Since neither of the named defendants can be held liable for the damages claimed by the crew, the district court was correct to find for the defendants.[3]
 
 
 7
 AFFIRMED.
 
 
 
 *
 Honorable Gus J. Solomon, Senior District Judge, District of Oregon, sitting by designation
 
 
 [1]
 Under a lay contract, each crew member is paid a predetermined share of the net profits realized from the eventual catch. The crew's contracts allot a certain number of "units" to each individual crew member. For example, Teixeira, the captain, received 45 units; Lira, the navigator, received 17 units; and Tucker, a seaman, received 6 units. The entire crew received 215 units. The total payable wages would be divided into one unit values and distributed according to the number of units allotted by contract to each individual crew member
 
 
 [2]
 A husbanding agent provides accounting, administrative services and credit arrangements for a ship charterer, and also assists the charterer in arranging repairs and selecting ship personnel
 
 
 [3]
 Because we agree with the district court that neither named defendant can be held liable for the claimed damages, we need not reach the district court's alternative conclusion that, interpreting the contracts in accordance with the custom and usage of the San Diego tuna industry, all wages owing to the crew were paid and the crew quit the ship voluntarily. We note that the crew is now barred by the statute of limitations from pursuing a further suit against either NAPAC or the ship