**Angel David BANEGAS, Plaintiff,**

v.

**UNITED BRANDS COMPANY, Empresa Hondurena De Vapores, S.A., and M/V OLANCHO, in rem, Defendants.**

Civ. A. No. 2:85–0426–1.

United States District Court,
D. South Carolina,
Charleston Division.

Oct. 3, 1986.

James W. Workman, Union, S.C. and Albert M. Salem, Jr., and W. Craig Hall, Tampa, Fla., for plaintiff.

Gordon D. Schreck, Buist, Moore, Smythe & McGee, Charleston, S.C., for defendants.

HAWKINS, District Judge.

This matter is before the court on motion of defendant United Brands Company (hereinafter "United Brands") for summary judgment and on motion of defendant Empresa Hondurena De Vapores, S.A. (hereinafter "Empresa") to dismiss the complaint. United Brands and Empresa filed their motions, respectively, on December 12, 1985, and December 23, 1985. Oral arguments were heard on May 6, 1986, at which time both motions were taken under advisement. The court has since reviewed these motions, the oral arguments and memorandums of counsel, the supporting affidavits, and the applicable law, and is of the opinion that these motions of defendants should be granted for the reasons expressed below.

This action was initiated by the plaintiff, Angel David Banegas (hereinafter "Banegas") for damages for personal injuries sustained while employed as a merchant seaman by Empresa aboard the M/V OLANCHO, a Honduran-flag cargo vessel with its Port of Registry at Tela, Honduras. Empresa is a Honduran corporation, the majority stock of which is owned by Caribbean Enterprises, Inc. (hereinafter "Caribbean"), a Delaware corporation. The majority of the stock of Caribbean is owned by defendant United Brands, a New Jersey corporation.[1] Empresa maintains its registered corporate office at Puerto Cortes, Honduras, as well as an office in New York City.

At all times pertinent to his complaint, the plaintiff was a citizen and resident of Puerto Cortes, Honduras. On or about January 28, 1982, at the Port of Tela, Honduras, he signed an employment contract with Empresa to serve as a seaman and member of the crew of the M/V OLANCHO. The employment contract signed by Banegas for his services on the M/V OLANCHO provided that claims for injury and/or death should be governed by the laws of Honduras.

---

1. Caribbean owns 277,984 shares of Empresa's 278,000 shares of issued stock. Although it is unclear from the record exactly how many shares of Caribbean's stock are owned by United Brands, it is clear that United Brands is the majority stockholder of that corporation.

Empresa was at that time operating the vessel as owner *pro hac vice* under a management agreement with the vessel's registered owner, Naviera Grenade, S.A., a Panamanian corporation, which in turn had bareboat-chartered the vessel to Balboa Shipping Company, Inc., another Panamanian corporation, which in turn had time-chartered said vessel to defendant United Brands.

On the date of plaintiff's injuries, February 16, 1982, the M/V OLANCHO was docked at the Port of Charleston, South Carolina, where she was engaged in cargo operations. At the time of the incident, Banegas was engaged in maintenance painting on the port side of the ship's bridge, utilizing a painting stage suspended with rope rigging. While engaged in this work he fell from the painting platform onto a pier located approximately 40 feet below before falling into the water. He was hospitalized and treated in Charleston at both the Medical University of South Carolina Hospital and Roper Hospital. Following treatment, he was released and repatriated to his home in Honduras.

Based on the above, Banegas filed the instant action on February 23, 1985, alleging causes of action for personal injury under the Jones Act/General Maritime Law and for maintenance and cure.

## I. DEFENDANT UNITED BRANDS' MOTION FOR SUMMARY JUDGMENT

In support of its motion, United Brands contends as undisputed fact that it was, at all relevant times, the time-charterer of the M/V OLANCHO and was not the employer of the plaintiff or the owner or operator of the vessel. Accordingly, it is United Brands' position that summary judgment should be granted it its favor inasmuch as the plaintiff's causes of action against it are dependent upon an employer/ship-owner-employee relationship between it and Banegas.

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.

56. The burden is on the moving party to show the absence of genuine issue of fact, *Adickes v. S.H. Kress and Company*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

■ In order to determine whether United Brands has met its burden, this court must first decide whether the establishment of an employer/shipowner-employee relationship is a necessary element of the plaintiff's two causes of action. The Jones Act, 46 U.S.C. § 688, gives a cause of action to "any seaman who shall suffer personal injury in the course of his employment...." Consequently, it is now well settled that "a suit under the Jones Act can be brought against the seaman's employer only," since the cause of action given under the Jones Act "occurs only where an employer and employee relationship exists." M. NORRIS, *The Law of Seaman* § 30:14, at 369 (4th ed. 1985); *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949), *reh'g denied*, 338 U.S. 839, 70 S.Ct. 32, 94 L.Ed. 513 (1949). A further and equally established corollary to this principle is that

when the vessel has been time-chartered with the vessel owner retaining command of the vessel, the master being his agent and representative, then the vessel owner rather than the time-charterer is the employer. In time charter arrangements, the vessel owner is the proper defendant in a Jones Act suit brought by or on behalf of an injured seaman.

*Id.* at 371; *Saridis v. S/S PARAMARINA*, 216 F.Supp. 794 (E.D.Va.1962); *see also, Thompson v. Empresa Hondurena de Vapores, S.A.*, 1966 A.M.C. 1634 (S.Ct.N.Y. 1966). Likewise, the warranty of seaworthiness, which would form the basis of any claim for unseaworthiness which the plaintiff might have, is a warranty which runs from the shipowner or owner *pro hac vice* of the vessel to the plaintiff. *See Bowen v. Union Concrete Pipe Co.*, 299 F.Supp. 1109 (S.D.W.Va.1969).

Finally, and in similar fashion, the sole party which has historically been held liable for maintenance and cure benefits, such as those sought in the plaintiff's second

cause of action, is the shipowner/employer. *See Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962).

Based on these well-established principles, it is clear that Banegas cannot recover damages or benefits under either cause of action unless he can establish that an employer/shipowner-employee relationship existed between himself and United Brands on the date he was injured.

In view of the above finding, this court must next determine the nature of the relationship which, in fact, existed between Banegas and United Brands. On the date of the incident which gives rise to this suit, the M/V OLANCHO was under time-charter to United Brands from Balboa Shipping Company, Inc. The time-charter agreement between Balboa Shipping Company, Inc. and United Brands, dated September 8, 1976, clearly stated that it was not "to be construed as a demise of the vessel" to United Brands, and that the vessel's owners were "to remain responsible for the ... crew." As time-charterer of the vessel, United Brands had no responsibility for employing the crew of the M/V OLANCHO. In fact, employment of the crew was the responsibility of the defendant Empresa pursuant to a Management Agreement with the vessel's registered owner. Banegas entered into a written contract of employment with Empresa, through the Master as its agent, for service on the M/V OLANCHO. That contract, in the form of Articles of Agreement, was executed by Banegas and the Master on January 28, 1982, at Tela, Honduras. The Articles specifically identify the defendant Empresa as the "Owner or Operator of Ship" and undisputedly establish said defendant to be the employer of the crew.

Unable to dispute United Brands' showing that it was acting only as time-charterer of the M/V OLANCHO at the time he suffered his injuries, Banegas contends that United Brands was the beneficial owner of the vessel and his ultimate employer due to United Brands' "ownership interest" in Empresa. More specifically, Banegas argues that because United Brands is the majority stockholder in Carib-

bean, which in turn owns the majority of stock in Empresa, United Brands thus exercises control over Empresa and had the ability to control the operation of the M/V OLANCHO and those employed as its crew at the time he was injured. Accordingly, Banegas submits that United Brands' beneficial ownership of the M/V OLANCHO, particularly when coupled with its ability to control that vessel or its employees, will subject United Brands to liability under either of the two causes of action.

This court disagrees. In point of fact, as is demonstrated by both defendants' answers to interrogatories and the affidavits which have been filed by United Brands and Empresa in support of their respective motions, these two companies are completely separate corporate entities, with separate offices and operations and no interlocking directorates or officers. It is true that the majority of stock in Empresa is owned by Caribbean, a Delaware corporation, the majority of stock of which is owned by United Brands. However, the mere fact of United Brands' indirect ownership interest of stock in Empresa, standing alone, is insufficient to permit this court to ignore the presumption of corporate separateness of United Brands and Empresa to which they are legally entitled.

It is a well-settled principle of corporate law that, absent a finding of fraud or bad faith, a corporation is entitled to a presumption of separateness from a sister corporation, even though both may be owned and controlled by the same entity. *See, e.g., Nolan v. Jensen*, 171 F.Supp. 351 (E.D.Va.1959). Ownership by one corporation of the stock in another corporation, either directly or through a subsidiary, is simply not a sufficient legal basis, in and of itself, to disregard corporate entities. *Id.; Williams v. McAllister Brothers, Inc.*, 534 F.2d 19 (2d Cir.1976). Moreover, actual domination, rather than simply the opportunity to exercise control, must be shown. *Berger v. Columbia Broadcasting System, Inc.*, 453 F.2d 991 (5th Cir.1972), *cert. denied*, 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972).

In the instant case, there is no evidence that United Brands dominated or exercised control over Empresa, even if it had the opportunity to do so. In fact, the evidence is directly to the contrary, indicating that Empresa has its own offices in Honduras, operated with its own officers who run the day-to-day management of the business.

Additionally, plaintiff has made no showing whatsoever to suggest that United Brands' indirect stock ownership in Empresa, through Caribbean, was used to perpetrate a fraud upon the plaintiff or anyone else. To the contrary, Empresa's corporate existence dates back to 1941, when it was formed by Honduran nationals, and the fact that a majority of its stock was subsequently acquired by another corporation suggests nothing more than a business investment decision, hardly the basis to suddenly ignore a perfectly valid time-charter between United Brands and the bareboat-charterer or "disponent owner" of the M/V OLANCHO.

Accordingly, in light of the above discussion, this court finds that the undisputed facts in this case clearly establish that United Brands was not the employer of the plaintiff or the owner or operator of the M/V OLANCHO at the time of the incident in question. To the contrary, these facts show that United Brands was acting only as time-charterer and, as such is entitled to judgment as a matter of law as to the plaintiff's claims against it under both causes of action.

## II. DEFENDANT EMPRESA'S MOTION TO DISMISS

Defendant Empresa's motion to dismiss is based upon the following three grounds:

1) This court lacks *in personam* jurisdiction over the defendant Empresa.

2) This court lacks jurisdiction over the subject matter of the plaintiff's complaint since the action involves a suit by a foreign seaman against his foreign employer, and this forum has no substantial connection with the litigation.

3) Empresa is entitled to a dismissal of the complaint as to said defendant under the doctrine of *forum non conveniens.*

Although Empresa relies upon three separate grounds to support its motion, this court is persuaded by Empresa's argument that it lacks subject matter jurisdiction over the plaintiff's complaint. Therefore, the court will not address Empresa's remaining grounds for relief, but instead will confine its comments to the issue of subject matter jurisdiction.

In addressing the issue of subject matter jurisdiction, this court is faced with the question of whether United States admiralty law and, in particular, the Jones Act should be applied to the present federal court action brought here by one foreign party against another.

In a triology of cases handed down over a period of some 17 years, the Supreme Court has outlined and discussed the factors which a federal court should consider in determining in a particular case whether there are sufficient American contacts to require the choice that United States law should be applied. In the seminal case of *Lauritzen v. Larsen,* 345 U.S. 571, 583–91, 73 S.Ct. 921, 928–932, 97 L.Ed. 1254 (1953), the Supreme Court listed seven separate factors to be considered by a court in determining whether the Jones Act should be applied in a case such as this one. *Lauritzen* involved a claim asserted in federal court by a Danish seaman against the Danish owner of a Danish vessel for injuries suffered while the plaintiff was aboard ship in Havana, Cuba. The seven factors are as follows:

1. The place of the wrongful act;

2. The law of the ship's flag;

3. The allegiance or domicile of the injured seaman;

4. The allegiance of the defendant shipowner;

5. The place of the contract (*i.e.,* where the shipping articles were signed);

6. The inaccessibility of a foreign forum; and

7. The law of the forum.

After considering the facts of that case, the Supreme Court in *Lauritzen*

held that Danish law and not the Jones Act should govern that dispute.

Some six years later, the Supreme Court in *Romero v. International Terminal Operating Company,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), had before it a suit brought by a Spanish seaman against a Spanish shipowner for injuries sustained in New York while plaintiff was aboard a Spanish vessel. The Court reaffirmed its earlier decision and further held that the principles of *Lauritzen* should be applied not only to a claim asserted under the Jones Act, but also to one arising under general maritime law. Emphasizing the need for a federal court to consider the relevant interests of foreign nations in the regulation of maritime commerce, the Supreme Court in *Romero* concluded that American Law should not be applied to the claims asserted in that case.

The third decision of the Supreme Court which considered a choice of law question similar to the one presented before this Court is *Hellenic Lines v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). This case involved a claim brought under the Jones Act by a Greek seaman injured on a Greek vessel in an American port. In discussing the seven factors listed in *Lauritzen,* Mr. Justice Douglas observed that the *Lauritzen* list was not intended to be exhaustive and that the test should not be applied in a mechanical manner. An eighth factor was then added for consideration by a trial court in deciding a question of this sort, namely the shipowner's "base of operations." In *Rhoditis,* the vessel was owned by a Greek corporation which had a base of operations in New York. More than 95% of the stock of the Greek corporation was owned by a Greek citizen who had been a United States domiciliary for more than 20 years, living in Connecticut and managing the corporation out of New York. Distinguishing these facts from those involved in *Lauritzen,* the Supreme Court held in *Rhoditis* that the Jones Act should be applied in that case.

*Ullah v. Canion Shipping Company, Ltd.,* 589 F.Supp. 552 (D.Md.1984), *aff'd,* 755 F.2d 1116 (4th Cir.1985). "It is against this background of well settled precedent that the instant case must be considered." *Pandazopoulos v. Universal Cruise Line, Inc.,* 365 F.Supp. 208 (S.D.N.Y.1973).

"When the eight factors outlined in *Lauritzen* and *Rhoditis* are considered here, it is apparent that the preponderance of them quite clearly points to the application of [Honduran] law for the resolution of this dispute." *Ullah,* 589 F.Supp. at 555.

The record reveals that the place of the wrongful act, the first *Lauritzen* factor, is located in the United States. Specifically, the wrongful act occurred in Charleston, South Carolina. The first *Lauritzen* factor, however, is typically attributed little weight because vessels frequently navigate over a large number of waters that are subject to a variety of different legal authorities. *Lauritzen,* 345 U.S. at 583–84, 73 S.Ct. at 928–29.

"The second factor identified in *Lauritzen,* the flag of the vessel, is of 'cardinal importance,' *Lauritzen,* 345 U.S. at 584, 73 S.Ct. at 929, and 'should be accorded great weight in the choice of law analysis.'" *Pereira v. Utah Transport, Inc.,* 764 F.2d 686, 689 (9th Cir.1985). In the present case, the flag of the vessel is Honduran. Realizing that the law of the flag state prevails unless some heavy counterweight appears, *see Lauritzen,* 345 U.S. 571, 73 S.Ct. 921, Banegas argues initially that this factor must be given less weight due to the M/V OLANCHO's extensive base of operations within United States territorial waters, *see Dalla v. Atlas Maritime Company,* 562 F.Supp. 752 (C.D.Cal.1983), and, furthermore, that the Honduran flag flown by this vessel is, in truth, a flag of convenience which must be disregarded in this instance.

Unfortunately for the plaintiff, however, these arguments must fail. Banegas' reliance on the *Dalla* case is misplaced for two reasons. The first is that the Fourth Circuit apparently considers the contacts which the vessel in question might have had with American ports to be a considera-

tion which should only be evaluated insofar as such facts might relate to the maintenance of the foreign shipowner of a base of operations in the United States. *See Ullah,* 589 F.Supp. 552; *Dracas v. Hellenic Lines, Ltd.,* 705 F.2d 1392 (4th Cir.1983). Therefore, any consideration of these contacts will not affect the weight given to the law of the flag in this case. The second reason this court cannot rely on the *Dalla* decision is because the facts of that case show that the vessel's owners had failed to deny U.S. nationality, that the vessel's contacts were primarily with the United States, and that it had virtually no contacts with its flag country, Liberia. This is clearly not the case with the M/V OLANCHO. That vessel's registered owner and its "disponent owner" are both Panamanian corporations. Furthermore, in addition to being owned by non-American corporations, it is managed by a Honduran corporation. And while it did make trips to various United States ports from time to time, it sailed regularly out of Honduran ports with Honduran seamen as crew members, such that its base of operations remained in Honduras.

■ Turning next to the plaintiff's flag of convenience argument, this court does agree with the general proposition that "the law of a flag of convenience state is not entitled to the same conclusive affect as that of a 'legitimate' flag state and cannot be used to oust otherwise applicable law." *Pandazopoulos,* 365 F.Supp. at 214. Expressed differently, where the foreign incorporation of the defendant and the foreign registration of the vessel were a facade designed to disguise American beneficial ownership, operation and control and to avoid the consequences of American shipping laws, the law of the flag will be disregarded as a mere flag of convenience. *See id.*

While in agreement with this general principle of admiralty law, this court disagrees with the plaintiff's statement that in this case the flag of the M/V OLANCHO is one of convenience. Before enumerating the reasons for this finding, it must be noted, however, that a determination of the allegiance of the defendant shipowner is necessarily encompassed in this finding. Accordingly, this fourth *Lauritzen* factor will be discussed below in conjunction with this court's consideration of the flag of convenience issue.

■ In the instant case, the registered owner, as well as the "disponent" owner, of the M/V OLANCHO are both Panamanian corporations. Empresa is, in fact, the owner *pro hac vice* of the vessel. As previously stated, the majority of Empresa's stock is owned by an American corporation, the majority of whose stock is owned by another American corporation, defendant United Brands. Because of this stock ownership, Banegas argues that the allegiance of the defendant shipowner *pro hac vice,* Empresa, must be placed with that of its American beneficial owners. While Empresa may be the owner *pro hac vice* of the M/V OLANCHO, this court is not convinced that the foreign incorporation of that corporation was a facade designed to disguise American beneficial ownership. As stated in previous portions of this order, Empresa was formed as an ocean-going cargo ship management concern by Honduran nationals and incorporated in 1941. Empresa's principal place of business and registered office has been maintained in Honduras since that date. At the time the plaintiff sustained his injuries, it appears that all directors and officers of Empresa were citizens of Honduras. Moreover, none of these officers and directors were or are directors and/or officers of United Brands. In sum, Empresa is a separate and independent corporation with its own offices in Honduras which are operated by its own officers who run its day-to-day business affairs. Simply put, the extent of United Brands' control over both Empresa and the M/V OLANCHO was limited to the sole task of selecting the various ports of call to be visited by the vessel. Although the M/V OLANCHO did make trips to those United States ports chosen by United Brands, it consistently maintained its base of operations in Honduras while sailing out of Honduran ports with Honduran seamen as crew members. Accordingly, within the context of this case, the ultimate ownership

of Empresa by American interests, which arose subsequent to Empresa's incorporation, and maintenance of one business office in New York by Empresa are not the "heavy counterweight" necessary to overcome the law of the flag. Instead, the facts of the present case reveal significant contacts or relationships between the vessel, defendant Empresa and Honduras, and clearly demonstrate that the registry of the M/V OLANCHO under the laws of that nation was premised upon legitimate reasons and not upon the interests of convenience. For these reasons, this court concludes, first, that Empresa's allegiance is with Honduras, and not with that of its American interests, and, secondly, that the flag flown by the M/V OLANCHO is a "legitimate" flag as opposed to a "flag of convenience."

Looking next to the third factor, allegiance or domicile of the injured party, this court recognizes that said factor is an important consideration, *Pereira*, 764 F.2d at 689, because each nation has a strong interest in protecting its citizens from being "maimed or disabled." *Lauritzen*, 345 U.S. at 586, 73 S.Ct. at 930. It is undisputed that Banegas is both a citizen and domiciliary of Honduras.

The fourth factor, allegiance of the shipowner, has already been determined and needs no further consideration.

The fifth factor, place of contracting, "is given little or no weight in maritime tort choice of law determinations since in most instances the location is fortuitous." *Villar v. Crowley Maritime Corporation*, 782 F.2d 1478, 1481 (9th Cir.1986). Banegas executed his employment contract in Honduras. "Choice of law expressed in the contract may be much more important." *Id.* Banegas' employment contract specifically provided that Honduran law would govern his remedies and any dispute which might arise with his employer.

The sixth factor is inaccessibility of a foreign forum. In reviewing the record, it appears that there is a foreign forum available to the plaintiff. The fact that Banegas would have access to the Honduran forum is fully supported by the affidavits submitted in support of Empresa's motion which indicate not only the benefits which plaintiff has already been paid and accepted under Honduran law, but also details the benefits and legal rights to which he is entitled in the future under that law.

"The seventh factor, law of the forum, is not one of great weight in a choice of law determination." *Id.* at 1482. Thus, merely because this court may have jurisdiction over the parties involved in this claim, a matter on which it need express no opinion, does not mean that American law should be imposed on a case that may have little connection to the United States. *See Lauritzen*, 345 U.S. at 590–92, 73 S.Ct. at 932–33.

"The final factor is the 'base of operations' test articulated in *Rhoditis*, 398 U.S. at 309–10, 90 S.Ct. at 1734." *Villar*, 782 F.2d at 1482. This court must examine the base of operations of both Empresa and the M/V OLANCHO. *See Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 289 (5th Cir.1984). As was determined earlier, the base of operations of the M/V OLANCHO is Honduras. The mere fact that the vessel made cargo calls in the United States does not change that base of operations from Honduras to the United States. Likewise, Empresa's day-to-day base of operations is also located in Honduras. This factual finding is fully supported by this court's previous discussion concerning Empresa's corporate structure, the location of its offices and the day-to-day operation of its business affairs.

After examining all of the factors necessary to a choice of law determination, it is clear that the only considerations favoring the application of American law are that Banegas was injured in the United States and that the majority of Empresa's stock is owned by American interests. These considerations are not dispositive, however, inasmuch as the place of injury is of minor importance and the fact of ultimate American ownership of the business venture is not controlling where, as here, the other

factors "point powerfully to the application of foreign law." *Villar*, 782 F.2d at 1481.

For all these reasons, this Court finds and concludes that neither the Jones Act nor the general maritime law of the United States should be applied to the claims asserted in this case by a foreign seaman against a foreign shipowner [*pro hac vice*]. The claims of this [Honduran] seaman asserted against this [Honduran] shipowner [*pro hac vice*] should be adjudicated in a [Honduran] Court.

*Ullah*, 589 F.Supp. at 559.

### III. DEFENDANT M/V OLANCHO, IN REM.

A review of the record confirms that the defendant vessel, the M/V OLANCHO, was never arrested, and, therefore, it is not within the jurisdiction of this court.

### CONCLUSION

For the foregoing reasons, it is the opinion of this court that the motions of United Brands Company and Empresa Hondurena de Vapores, S.A., should be granted. It is, therefore,

ORDERED, that judgment be, and the same is hereby, entered on behalf of the defendant United Brands Company. It is

ORDERED FURTHER, that the actions against defendants Empresa Hondurena de Vapores, S.A. and M/V OLANCHO, *in rem,* be, and the same are hereby, dismissed.

AND IT IS SO ORDERED.